**In re William David SULLIVAN, Debtor.**

**Judy Faye Carter SULLIVAN (Syron), Plaintiff,**

**v.**

**William David SULLIVAN, Defendant.**

**William David SULLIVAN, Plaintiff,**

**v.**

**Judy Faye Carter SULLIVAN (Syron), Defendant.**

**Bankruptcy No. 585–10084. Adv. Nos. 85–1149, 85–1114.**

United States Bankruptcy Court, N.D. Mississippi.

June 20, 1986.

W.H. Jolly, Jr., Threadgill, Smith, Sanders & Jolly, Columbus, Miss., for Judy Faye Carter Sullivan.

John W. Crowell, Gholson, Hicks & Nichols, Columbus, Miss., for William David Sullivan.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the complaint to deny dischargeability of a debt, filed by the Plaintiff, Judy Faye Carter Sullivan (Syron), against the Debtor, William David Sullivan; as well as, the complaint to determine the dischargeability of a debt filed by the Debtor, William David Sullivan, against the Defendant, Judy Faye Carter Sullivan (Syron); answers to each of the said complaints being filed by the adverse party; all parties being represented before the Court by their respective attorneys of record; on proof in open court; and the Court having heard and considered same, finds as follows, to-wit:

### I.

This Court has jurisdiction of the subject matter of and the parties to these adversary proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These are core proceedings as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

The genesis of this dispute is found in a decree of divorce, entered on November 9, 1983, in the Circuit Court of Mobile County, Alabama. This decree was not the product

of a judicial determination, but was entered with the joint consent of William David Sullivan, hereinafter referred to as Debtor, and his former wife, Judy Faye Carter Sullivan, now Syron, hereinafter referred to for purposes of convenience in this Opinion as Plaintiff or Mrs. Syron. The decree incorporated a property settlement agreement executed by both parties which granted custody of their two minor children to the Plaintiff and which contained the following obligations to be performed by the Debtor, to-wit:

1. Debtor shall pay to his former wife as child support the sum of $1,350.00 per month until such time as the house and yard are completed as provided below, at which time the child support shall be adjusted according to circumstances changed at that time, and the defendant shall assume and be responsible for all extraordinary medical and dental expenses of the said minor children and shall maintain in full force and effect a policy of medical and hospitalization insurance ... and shall also pay all deductible and non-covered expenses for the medical and hospitalization care or treatment of said children.

2. Debtor shall convey to his former wife his interest in jointly owned property in Eight Mile, Alabama.

3. Debtor shall
> as a property settlement, either assume and be responsible for the cost to reasonably complete the construction and improvement of the house and yard ... within five (5) years of the date of the judgment of divorce, ... or to pay to the plaintiff as the costs [sic] to reasonably complete the construction and improvement of the house and yard on said real property, the sum of $8,000.00 on the first day of February and the sum of $8,000.00 on the first day of May of each year for each of the five (5) succeeding years from the date of the judgment herein, ... (emphasis added)

4. Debtor shall transfer to Plaintiff his interest in the 1983 Oldsmobile and the 1980 Mobile Home, and "assume any and all outstanding indebtedness due thereon and hold plaintiff harmless therefor."

5. Debtor shall maintain and keep in force life insurance policies designating the plaintiff as beneficiary with a face value of $50,000.00 until plaintiff's remarriage. Thereafter the children are to be designated as the beneficiaries.

6. Debtor "shall assume and be responsible for" private school expenses of the children, including tuition, books, fees, uniforms, etc.

7. Debtor shall provide plaintiff with a "reasonable amount of liability and collision insurance on any motor vehicle", as well as, liability and casualty homeowner's insurance until her remarriage.

8. The parties *waived all right to alimony,* and no order was made as to the same.

9. Debtor "shall assume and be responsible for any and all outstanding debts of the marriage and hold plaintiff harmless therefrom."

10. Judgment shall be entered against the debtor in the amount of $250.00 for the plaintiff's attorney's fees and $84.00 for costs of court.

## IV.

The Plaintiff contends that all of the obligations set forth immediately hereinabove are nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5). At the same time, the Debtor contends that the statutory language found in that section indicates that most of the obligations are, in fact, dischargeable. 11 U.S.C. § 523(a)(5) reads as follows:

> (a) The discharge under Sections 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> ....
>
> (5) To a spouse, ... or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of

record or property settlement agreement, but not to the extent that—

(A) Such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . .; or

(B) Such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

## V.

The first task that must be undertaken by this Court is the determination of whether the enumerated obligations are "actually in the nature of alimony, maintenance, or support". To assist in resolving this issue, the Court notes the following factual circumstances that were adduced by the proof, as well as, by the presentation of documentary evidence, to-wit:

1. Pursuant to a Court order entered on July 13, 1984, the Debtor was cited for contempt by the Circuit Court of Mobile County, Alabama, for his refusal to comply with the terms of the decree of divorce and property settlement discussed hereinabove. Additionally, a judgment was awarded against the Debtor in favor of the Plaintiff in the sum of $18,258.45, representing certain moneys that the Debtor was ordered to pay to the Plaintiff in the decree of divorce, to-wit: $16,000.00, representing two $8,000.00, payments which were to be utilized in the construction of the Plaintiff's new residence; $981.00, representing delinquent child support accrued through June, 1984; $432.00, representing private school expenses; $801.45, representing a debt owed to Citicorp for which the Debtor had assumed liability; and $44.00, representing an indebtedness owed to Sears for which the Debtor had also assumed liability.

2. The Debtor's agreement to be responsible for the cost to reasonably complete the construction and improvement of the residence and yard was clearly in the nature of a property settlement. By the terms of the divorce decree, the Debtor conveyed his interest in the real property, as well as, the mobile home which was occupied by the Debtor and the Plaintiff during the course of their marriage.

3. The Plaintiff waived all her right to receive alimony from the Debtor; so consequently, this case now centers on what obligations would not be dischargeable because they are in the nature of support for the children.

4. The monetary obligations assumed by the Debtor total in excess of $38,000.00, annually. This includes the child support to be paid monthly, the construction costs for the residence, and the monthly payments on the various indebtednesses assumed by the Debtor, such as, the automobile payment, the mobile home payment, the payments to Citicorp and Sears, etc.

5. While the Debtor was continuing to operate his business in Mobile County, Alabama, subsequent to the divorce, he paid child support to the Plaintiff at the rate of approximately $310.00, per week. In July, 1984, the Debtor liquidated and closed his Alabama business, then returned to Columbus, Mississippi, where he managed a store for his father. The Debtor has apparently suffered a series of financial setbacks, and is currently working for his father in Brookhaven, Mississippi, earning approximately $250.00, per week, as his "take home" pay. The Plaintiff testified that the Debtor has been paying her child support at the rate of approximately $50.00, per week, and is currently $28,048.92, in arrears since the entry of the divorce decree. The Plaintiff has remarried and her current husband has been paying the automobile indebtedness, the mobile home indebtedness, as well as, other bills, including the insurance premium necessary to cover the Plaintiff's children on a medical and hospitalization policy. The uninsurable medical expenses are not being paid by the Debtor.

6. The Debtor's father testified that the Debtor has been experiencing serious emotional problems for the past several years. He further testified, which testimony this Court finds to be credible, that the Debtor could not resume the level of his former

business activities without substantial help from his father.

7. So that the factual circumstances of this case may be set in a proper perspective, the Court observes that the Debtor has conveniently divested himself of two motor vehicles and a fishing boat. Although these three items of property were each encumbered by separate indebtedness-es, which were assumed by the three "purchasers", the Debtor still retains the use of one of the motor vehicles and the boat. The second motor vehicle, an automobile, was conveyed to the Debtor's brother for no consideration other than the assumption of the indebtedness encumbering this vehicle. The Court also notes the Debtor's remark that he had no motivation to seek a higher paying job since any excess income would necessarily be payable to his former spouse.

8. Concerning the Debtor's ability to pay, the Court has reviewed the individual income tax returns which were introduced into the proof as Debtor's Exhibits 5, 6, and 7. The analysis of these returns reveals the following:

1983—The Debtor's taxable business income was reflected as $14,728.00; the business profit and loss statement revealed gross sales of $111,238.00, cost of sales in the sum of $62,995.00, netting a gross income in the sum of $48,243.00; the expense deductions, which did not appear to be extraordinary, totaled $33,515.00; the 1983 year end inventory totaled $29,332.00.

1984—$5,100.00, was reflected as income from wages or salaries; a business loss of $1,073.77, was deducted from the wages and salaries income netting a taxable income in the sum of $3,826.23; the business profit and loss statement reflected gross sales in the sum of $37,743.57, cost of sales in the sum of $23,795.66, netting a gross income in the sum of $13,947.91; business expenses totaling $15,212.63, were deducted from gross income, producing the aforementioned business loss in the sum of $1,273.77.

Since this business was operated for approximately six months in 1984, the only

business expense that appears to be slightly exorbitant, compared to the previous year's return, is the expense for wages in the sum of $5,841.07. There is no explanation as to why the beginning inventory listed in the sum of $5,000.00, is significantly different from the previous 1983 year end inventory in the sum of $29,332.00. The 1984 year end inventory appears to be merely estimated at $5,000.00, which necessarily equates the 1984 purchases in the sum of $23,795.66, at the same amount as the cost of goods sold.

1985—Since the Debtor was no longer engaged in business as a sole proprietor, his taxable income was earned strictly from wages or salaries in the sum of $11,175.00.

The only item of unusual significance that is revealed by inspecting the aforementioned tax returns is the total lack of explanation for the depletion of approximately $25,000.00, in inventory from year end 1983 to beginning year 1984. This may or may not impact the ultimate decision in this case.

## VI.

In determining whether the obligations are actually in the nature of alimony, maintenance, or support, this Court is obliged to look to bankruptcy law, rather than state law. State law, however, should not be ignored entirely, but looked to for guidance. In the case of *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983), Circuit Judge Cornelia G. Kennedy wrote the following:

In accordance with the express language of § 523(a)(5) the bankruptcy courts have uniformly required that joint obligations assumed by the debtor as a part of a separation or divorce settlement must be 'actually in the nature of' alimony or support in order to be excepted from discharge. [citations omitted] The issue of when an assumption of joint debts is 'in the nature of alimony, maintenance, or support' as opposed to a division of communal property is to be determined by federal bankruptcy law. [citations omitted] The legislative history of

the provision is unequivocal on this point. Both the House and Senate Reports declare:

> What constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law. Thus, cases such as In re Waller, 494 F.2d 447 (6th Cir.1974), are overruled, and the result in cases such as Fife v. Fife, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. The Proviso, however, makes non-dischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless, on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations as to whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. [emphasis supplied]
>
> Id. at 1107

See also, Shaver v. Shaver, 736 F.2d 1314 (9th Cir.1984), where Senior Fifth Circuit Judge John Minor Wisdom, writing for the Ninth Circuit, stated that:

> Because of the federal interests reflected in the Bankruptcy Act, the courts look to federal law to determine whether an obligation is 'actually in the nature of ... support' and is therefore nondischargeable. Stout v. Prussel, 691 F.2d 859, 861 (9 Cir.1982). See Erspan v. Badgett, 647 F.2d 550 (5 Cir.1981), cert. denied, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), in which the court stated that 'regardless of how a state may choose to define 'alimony', a federal court, for purposes of applying the federal bankruptcy laws, is not bound to a label that a state affixes to an award, and that, consistent with the objectives of federal bankruptcy policy, the substance of the award must govern'. Id. at 555. Applying federal standards, the bankruptcy court determined that the debt at issue in this case was nondischargeable. In re Shaver, 27 B.R. 452 (Bankr.D.Nev.1983). Because the right to a discharge in bankruptcy is a matter generally left to the sound discretion of the bankruptcy judge, we disturb this determination only if we find a gross abuse of discretion. Stout v. Prussel, 691 F.2d 859, 861 (9 Cir.1982); see also In re Williams, 703 F.2d 1055, 1057–58 (8 Cir.1983), and In re Nelson, 20 B.R. 1008 (D.Tenn.1982).
>
> Id. at 1316.

## VII.

A four part test has emerged from bankruptcy decisions to provide guidance as to whether a financial obligation is actually in the nature of alimony, support, or maintenance. Bankruptcy Judge Merritt S. Deitz, Jr., in In re Helm, 48 B.R. 215 (Bankr.W.D.Ky.1985) cited with approval the aforementioned test initially advanced in In re Calhoun, supra. Judge Deitz wrote the following:

> There is a clean geometry about Calhoun. The operative portion of the opinion, lining out the court's reasoning and creating a new cannon for the bankruptcy judge's guidance on remand, establishes four separate levels of judicial analysis. [footnote omitted] They are arranged logically and in ascending order of refinement, so that any given one need be applied only if the one immediately preceding has not produced the solution. Under this progressive formula we are directed to consider whether:
>
> (a) the intent of the state court or the parties was to create a support obligation;
>
> (b) whether the support provision has the actual effect of providing necessary support;
>
> (c) the amount of support is so excessive as to be unreasonable under traditional concepts of support, and finally;
>
> (d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law. [emphasis in original]
>
> Id. at 220–21.

This Court finds the logic expressed in Calhoun and Helm to be extremely per-

suasive. Consequently, applying the elements of the aforementioned test to the obligations set forth in the Sullivan divorce decree and property settlement agreement, this Court reaches the following conclusions, the majority of which are resolved at the first level of analysis:

1. *The obligation to pay for the cost of construction of the residence at the rate of $16,000.00, per year, for five years*—Since alimony was specifically waived by the Plaintiff and since this particular provision included the language "as a property settlement", the parties did not evidence the requisite intent that this obligation be considered as support or maintenance. This conclusion is supported by the fact that the Plaintiff and the two children were awarded the mobile home and the real property on which it was located to be utilized by them for residential purposes. This obligation, therefore, is found to be dischargeable in its entirety.

2. *Obligations to pay the debt secured by the mobile home, the debt secured by the 1983 Oldsmobile, and all other outstanding debts of the marriage*—Again since alimony was waived, this Court finds no requisite intent that these obligations were intended as support or maintenance. However, if such a conclusion is in error, these payments, when added to the monthly sum denominated as child support, which will be discussed hereinbelow, are so unreasonable and unconscionable as to go beyond the traditional concepts of support. Even if these obligations could be considered as being intended for support or maintenance, they fail subparts (b) and (c) of the *Calhoun—Helm* test discussed hereinabove, and as such, are dischargeable in bankruptcy.

3. *The obligation to pay for private school expenses of the children, including tuition, books, fees, uniforms, etc.*—This obligation is obviously a luxury and lacks the actual effect of providing *necessary* support. As such, this obligation is dischargeable in bankruptcy.

4. *The obligation requiring the Debtor to maintain life insurance until the Plaintiff's remarriage and thereafter for the benefit of the children*—Although the rationale of life insurance in the context of divorce proceedings is to provide a safeguard against the stream of support being terminated because of the parent's death, there was no proof at the trial of this case of any indebtedness that had been created as a result of this obligation. The Court cannot effectively address this obligation at this time, although it will be considered hereinbelow in the discussion of child support.

5. *The obligations to pay insurance on the automobile and insurance on the mobile home until the Plaintiff's remarriage*—The proof was insufficient to convince this Court that the parties intended these obligations to be actually in the nature of support or maintenance. As such, although no precise indebtedness was established and since the Plaintiff has, in fact, remarried, these obligations are dischargeable in bankruptcy.

6. *The obligations to pay Court costs and attorney's fees*—Again since alimony was waived by the Plaintiff, these obligations are not in the nature of child support or maintenance, and as such, are dischargeable in bankruptcy.

All the obligations have now been addressed with the exception of the child support obligation in the sum of $1,350.00, per month, and the obligation on the part of the Debtor to pay all medical, dental, and hospitalization expenses for the children. These obligations will be discussed hereinbelow.

## VIII.

The obligation to pay child support at the rate of $1,350.00, per month, and the obligation to pay all reasonable medical, dental, and hospitalization expenses for the children are obviously intended as support obligations. Although the discussion may be somewhat academic, these obligations will be reviewed separately.

■ Insofar as the medical, dental, and hospitalization expenses are concerned, the Plaintiff testified that the Debtor was not paying these obligations, but no precise indebtedness was ever mentioned. Although he is not obligated to do so, Mr. Syron, the Plaintiff's current husband, is maintaining medical and hospitalization insurance covering the Debtor's two children. This is certainly commendable on his part. However, since no specific indebtedness was mentioned, this Court can make no disposition of this issue at this time. Ordinarily, these expenses would not be dischargeable in bankruptcy. This presumes, of course, that the child support award is within a reasonable threshold and was not fashioned to include medical, dental, and hospitalization expenses. This also presumes that the obligated spouse has the ability to pay or meet the obligations. As set forth hereinbelow, if the child support award is found to be unreasonably excessive, considering the Debtor's ability to pay, the separate obligation to pay medical, dental, and hospitalization expenses will be considered covered under the umbrella of child support and thus dischargeable.

### IX.

■ Ordinarily, a payment in a divorce decree or property settlement agreement denominated as child support would be nondischargeable in bankruptcy. In this case, there is no dispute that the amount set as child support was not the product of a judicial determination, but rather the result of an out of court agreement, conceived in this Court's mind with little practical reasoning. There was no feasible way then or now for the Debtor to realistically honor all of the obligations contained in the divorce decree and the property settlement agreement. Considering his 1983 income in the sum of $14,728.00, he could not even meet the child support obligations which total annually the sum of $16,200.00 ($1,350.00, per month × 12 months).

Since the Circuit Court of Mobile County did not establish this child support payment on the basis of an evidentiary hearing, this Court does not feel that it is sitting as an appellate court, judging the merits of the state court decision.

Therefore, the task now to be undertaken involves weighing the reasonableness of the child support payments, set forth in the Sullivan divorce decree, against the concept of a "fresh start" which is the bedrock of all bankruptcy law. Considering the quantum of proof presented, this task is extremely perplexing.

The *Calhoun* case discussed the effect of providing support *necessary* to insure that the daily needs of the former spouse and the children of the marriage were satisfied. This discussion followed the determination that the obligation, in that case, was intended by the parties to be in the nature of support or maintenance. *Calhoun*, however, dealt with the debtor's assumption of debts, jointly incurred with the former spouse, and not child support or maintenance per se. In the case before this Court, this discussion is largely academic in that the assumption must be made that payments designated as child support have the effect of providing support necessary for the Sullivan children. As such, this Court assumes that steps (a) and (b) of the *Calhoun* test have been met by the Plaintiff. Therefore, let us move to step (c) which requires an examination of whether the obligation assumed is reasonable. Judge Kennedy again offers well reasoned insight in this area with the following comment taken from the *Calhoun* opinion:

Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. Such an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law. For this reason, the loan assumption should be treated, to the extent possible, the same as ordinary direct child support, or alimony payments. A universal consideration of state courts in setting such di-

rect support payments is the supporting spouse's general ability to pay the support ordered. Under the mandate of Congress that the bankruptcy court fashion a common law of bankruptcy and the principle that one cannot contract away bankruptcy rights, the bankruptcy courts in the case of an obligation to hold the former spouse harmless on joint debts must, therefore, examine the ability to pay. If, at the time the debts were assumed, [footnote omitted] the assumption substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support. We recognize the difficulty of making such a factual inquiry. However, the alternative would be to permit the debtor to contract away the right to discharge in bankruptcy and the opportunity for a fresh start. The inquiry will be limited to whether the amount agreed to is manifestly unreasonable in view of the earning power and financial status of the debtor spouse.

If the bankruptcy court finds the loan assumption too excessive to be fairly considered 'in the nature of' support it must then set a reasonable limit on the nondischargeability of that obligation for purposes of bankruptcy. Use of factors similar to those a state court would employ to formulate a reasonable limit on support may be used to serve that limiting function in the context of a dischargeability determination. In such cases the bankruptcy courts should consider such traditional state law factors as the relative earning powers of the parties, their financial status, prior work experiences or abilities, other means of support and other facts relevant to the *substance of the result* achieved by the loan assumption in order to determine how much of the debt assumed can be fairly considered 'in the nature of' support for purposes of federal bankruptcy. [footnote omitted] [emphasis in original] *In re Calhoun,* 715 F.2d 1103 at 1110.

Footnote 12 of Judge Kennedy's opinion is also instructive:

We emphasize that the nature of this final inquiry as to whether the loan assumptions would constitute an excessive degree of support beyond that which any state court would reasonably allow given the parties' relative circumstances, is a limited one. It is not intended that the Bankruptcy Court sit as a 'super-divorce' court. Rather, the purpose of such inquiry is to ensure that the degree of support represented by the loan assumptions, particularly in uncontested cases, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding.

Under the circumstances of this case as set forth earlier in this Opinion, it would literally be impossible for the Debtor to pay child support to his former spouse in the sum of $1,350.00, per month. These payments alone would exceed his total income earned during his most productive years. Although this Court is well aware that the Debtor's former spouse requires child support contributions in order to properly raise her children, a child support obligation that exceeds the Debtor's total income is manifestly unreasonable. On the other hand, this Court will not ignore the Debtor's comment that he has no motivation to increase his income since any additional earnings would merely be payable to his former spouse. The inference is present too that the Debtor may well have kept his income at an artificially lower level to circumvent his support obligations. The proof on this point, however, does not rise to anything more than mere speculation at this time.

As set forth in *In re Helm, supra,* "[t]he fourth and final *Calhoun* inquiry forces a quantum determination—the establishment of 'a reasonable limit' on the dischargeability of that obligation for purposes of bankruptcy." 48 B.R. at 225. Judge Deitz recognized the problem now confronting this court when he stated

for we suspect that it is here, if at all, that *Calhoun* stretches beyond the clear boundaries of the controlling federal statute, 11 U.S.C. § 523(a)(5). That section, it must be noted, draws no dischargeability distinction between 'reasonable' and 'unreasonable' support; either an obligation is for support, and therefore nondischargeable, or it is not.

Given the conceptual framework of *Calhoun,* and particularly the grant of power to bankruptcy courts to make quantum apportionments, it was inevitable that this tension with the statute would result. *Id.*

### X.

At the trial of this case, the Plaintiff's attorney objected to the Court considering the issue of dischargeability apportionment of the child support award. The underlying reason voiced for the objection was that the Debtor had not requested such relief in his pleadings. The Plaintiff's attorney is correct in that the pleadings do not contain a request for modification or apportionment for purposes of dischargeability of the support obligations. The pre-trial order, on the other hand, addresses this issue precisely in the contested issues of law and contested issues of fact as perceived by the Debtor. The pre-trial order was entered with the consent of the attorneys for both parties and controls the course of this proceeding. Fed.R.Civ.P. 16(e) The objection, therefore, on the basis of the insufficiency of the pleadings, is not well taken; but, the objection is not overruled at this point for the reason discussed hereinbelow.

In order for this Court to make an apportionment as to what amount of the child support award is manifestly unreasonable and therefore dischargeable, competent evidence should be before the Court concerning the needs of the Debtor's two children, the Debtor's living expenses, and otherwise his ability to pay, now and in the future. The Court is of the opinion that *it does have the authority to make an apportionment,* particularly because there was no judicial determination as to the reasonableness of the child support award in the state court; but such an apportionment must be considered only after a complete presentation of all the relevant evidence, a substantial portion of which was not presented or developed at the trial of this case. Since the Debtor's pleadings did not specifically encompass the apportionment issue, fairness and equity dictate that the Plaintiff should have the opportunity to capably prepare her case as to this issue, utilizing such discovery tools as may be available. The objection, therefore, to considering the issue of apportionment, i.e., the exact extent of the child support award that may be dischargeable because it is manifestly unreasonable, will be sustained at this time to permit the Plaintiff, as well as, the Debtor, should he so choose, to more fully prepare and develop the evidence pertinent to this issue.

Discovery in this case will be reopened for a period of ninety (90) days from the date of this Opinion. At the conclusion of discovery, this case will be reset for the presentation of proof on the limited issue as to the extent of apportionment.

An Order will be entered consistent with this Opinion.