**In re Ernest G. SMITH, Jr.**

**Ernest G. SMITH, Jr., Debtor, Plaintiff,**

**v.**

**Deborah Britt SMITH and Frank M. Youngblood, Trustee, Defendants.**

**Deborah Britt SMITH, Defendant/CounterClaimant,**

**v.**

**Ernest G. SMITH, Jr., Plaintiff/CounterDefendant.**

**Bankruptcy No. 8903052JC. Adv. No. 890283JC.**

United States Bankruptcy Court, S.D. Mississippi.

March 13, 1990.

William W. Abbott, Jr., Jackson, Miss., for plaintiff.

Luke Dove, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

EDWARD R. GAINES, Bankruptcy Judge.

On December 30, 1987, a Judgment of Divorce was entered by the Chancery Court of Hinds County, Mississippi, granting divorce on the grounds of irreconcilable differences to Ernest G. Smith, Jr. and Deborah Britt Smith. A petition under Chapter 7 of the Bankruptcy Code was filed by Ernest G. Smith, Jr. on October 2, 1989. On October 23, 1989, Ernest G. Smith, Jr. filed this adversary complaint to determine the dischargeability of obligations to his former wife under the terms of the divorce judgment. Having considered the pleadings, the memoranda submitted by counsel, and the testimony presented at trial, the Court finds that the obligations owed by the debtor to his former wife are in the nature of alimony, maintenance or child support and are,

therefore, nondischargeable pursuant to the provisions of section 523(a)(5). This Court declines analyzation of the Deborah Smith's need for support or changed circumstances in determining dischargeability of obligations owed under the divorce judgment.

## I.

Deborah and Ernest Smith were married on December 21, 1968, in Hinds County, Mississippi.[1] They have one child, Brittney Leigh Smith, born November 3, 1980. Ernest Smith is a certified public accountant. He is a graduate of Mississippi College with an accounting degree. He formerly owned his own accounting firm and is presently employed by the Horne CPA Group as a senior manager. He does both tax and audit work as a C.P.A. His current salary is in the range of $55,000.00 per year. Mr. Smith has been a C.P.A. since approximately 1978.

Deborah Smith is 39 years old. She has a high school diploma plus some education at a junior college. She has been employed as a legal secretary and paralegal for several years and has taken several courses in paralegal work. During the marriage, Deborah Smith worked as a legal secretary and contributed to the family income.

In February of 1987, the Smiths separated. Deborah Smith's income was approximately $32,000.00 per year and Ernest Smith's income was approximately $60,000.00 per year. From 1984 through the time of the separation, Ernest Smith paid most of the family bills. Deborah Smith paid for groceries and Brittney's school and day care.

On September 14, 1987, the Smiths filed a Joint Bill of Complaint for Divorce in the Chancery Court of the First Judicial District of Hinds County, Mississippi. The parties alleged that they "have made adequate and sufficient provision by written agreement for the custody, support, visitation and maintenance of the child born of this marriage, alimony and the settlement of all property rights between the parties,

which agreement the parties request be approved by the Court and incorporated in a Final Judgment".

The Smiths negotiated the Separation and Property Settlement Agreement. Neither party was represented by an attorney. The Separation Agreement was signed in August, 1987. On December 30, 1987, the Chancery Court entered a Final Judgment granting a divorce on the grounds of irreconcilable differences. The Final Judgment incorporated the "Separation and Property Settlement Agreement". Pertinent portions of the "Separation and Property Settlement Agreement" are as follows:

WHEREAS, Ernest G. Smith, Jr. and Deborah Britt Smith, husband and wife, are both adult resident citizens of the First Judicial District of Hinds County, Mississippi, and are contemplating a divorce on grounds of irreconcilable differences, and

WHEREAS, the parties feel that it would be in their best interest and in the best interest of their minor child to settle by agreement all matters relating to alimony, the custody, visitation and support of the minor child born of the parties, all property rights existing between the parties, and all other matters relative to their separation, the parties hereby enter into this Separation and Property Settlement Agreement on the following terms and conditions ...

2. Husband shall pay to wife the sum of One Thousand and 00/100 Dollars ($1,000.00) per month, for the *SUPPORT AND MAINTENANCE* of the minor child of the parties, with said payments to begin on August 15, 1987 and continue to be made on or before the 15th day of each and every month thereafter until said child reaches the age of majority or becomes otherwise emancipated.

3. Husband shall pay to wife lump sum *ALIMONY* in the total amount of Fifty–Four Thousand and 00/100 Dollars ($54,000.00), payable at the rate of Five Hundred and 00/100 Dollars

---

**1.** The opinion of the court is primarily taken from the proposed findings of fact and conclu-sions of law submitted on behalf of the Defendant/Counterclaimant Deborah Britt Smith.

($500.00) per month, interest free, with said payments to begin on August 15, 1987 and continue to be made on or before the 15th day of each month thereafter until paid. In the event wife remarries the said *ALIMONY* payments will be reduced to Two Hundred Fifty and 00/100 Dollars ($250.00) per month and will continue until the indebtedness is paid in full. In the event husband sells or transfers his interest in his CPA firm (Smith & Associates) husband agrees to pay to wife one-third (⅓) of any and all payments paid to him in connection therewith until the entire indebtedness due to wife is paid in full. In the event of wife's death, all payments due hereunder will cease.

4. So long as wife remains unmarried, husband agrees to be responsible for and pay when due: (1) housekeeping services for wife for one day per week; (2) premiums on wife's liability, comprehensive, collision, theft and emergency road service insurance policy on wife's automobile; (3) premiums on wife's renter's personal property insurance including all replacement riders for jewelry, furs, fine arts, etc.; (4) when wife purchases a home, husband agrees to be responsible for and pay when due all premiums on wife's homeowner's or equivalent home insurance policy insuring at all times the full appraised value of the home and replacement of contents including jewelry, furs and fine arts.

5. It is understood that at the present time, wife's employer provides hospitalization and medical insurance coverage on the minor child of the parties. Wife agrees to continue such insurance so long as the premiums are paid by her employer. Husband agrees to pay, when due, all medical, hospital, dental or drug charges incurred by, for or on behalf of the minor child of the parties not covered by insurance, or to promptly reimburse wife for all such charges paid by her within 10 days of receipt of a paid bill for such expenses ...

7. Husband agrees to pay the total expenses for a four year college education for the child of the parties, including tuition, fees, books, room and board, at an institution selected by the child.

8. Husband agrees to maintain and pay all premiums when due, the current life insurance policy on his life with The Prudential Insurance Company of America in the amount of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00), or equivalent policies, with the minor child of the parties a sole beneficiary, and shall furnish wife with proof of such coverage at or before the time this agreement is executed. Such policy shall remain in effect and payable in the above amount until the child becomes emancipated or completes her college education, whichever is later. Husband also agrees to obtain and pay all premiums when due, a life insurance policy on wife's life with a mutually agreeable life insurance company in the amount of Fifty Thousand and 00/100 Dollars ($50,-000.00), with the minor child of the parties as sole beneficiary, and shall furnish wife with proof of such coverage at the time this agreement is executed. Such policy shall remain in effect and payable in the above amount until the child becomes emancipated or completes her college education, whichever is later.

10. At or before the time of the execution of this agreement, wife shall convey to husband her interest in the house and lot located at 3427 Wheatley Street, Jackson, Mississippi. Husband agrees to pay when due all notes, taxes and insurance premiums on said house and lot and indemnify and hold wife harmless for any indebtedness due thereon. Husband agrees to hold said property for the use and benefit of the child of the parties and husband agrees that in the event of his death, the property will go to the child.... (Emphasis and caps added).

After the Final Judgment of Divorce was entered, Ernest Smith paid all financial ob-

ligations required by the Separation Agreement for approximately one year. In October, 1988, he remarried. In February, 1989, Ernest Smith unilaterally reduced his total payments to $1,000.00 per month.

On February 9, 1989, Ernest Smith filed a Motion to Modify Final Judgment of Divorce in the Chancery Court. He sought a modification of the support obligations on the grounds that he had experienced a material change in circumstances in the form of severe financial reversals in his business. An Amended Motion to Modify Final Judgment of Divorce was filed on March 1, 1989, in which Ernest Smith prayed that "alimony payments", housekeeping and insurance payments should cease altogether.

On April 25, 1989, the Chancery Court entered a Partial Summary Judgment and found that the provisions in the Separation Agreement for alimony in the amount of $54,000.00 to be paid in installments constituted a judgment for alimony in gross or "lump sum" alimony. The court found this was a final settlement between the husband and wife as to his duty to contribute to her support that was not subject to modification under Mississippi law.[2]

On August 2, 1989, after a one-week trial, the Chancery Court found that Ernest Smith failed to prove a material or substantial change in his financial condition that would allow the court to modify his court ordered child support and periodic alimony obligations. The court denied relief to Ernest Smith and ordered him to pay all arrearages and resume payments originally agreed upon and ordered by the divorce judgment.

Subsequently, garnishment proceedings were instituted by Deborah Smith to collect past due alimony and child support. After the writ of garnishment was served upon Ernest Smith's employer, Mr. Smith filed his Chapter 7 petition.

On October 9, 1989, seven days after filing his petition under Chapter 7, Ernest Smith filed a notice of appeal of the Chancery Court's ruling to the Mississippi Supreme Court. On October 23, 1989, the debtor filed this adversary complaint seeking to discharge the obligations to his former wife under the divorce judgment. In his complaint, the debtor alleged the following:

The Plaintiff herein, Ernest G. Smith, Jr., alleges that all obligations on his part arising from the Judgment of Divorce relating to the payment of $54,000.00 to the wife is in [sic] nature of a property settlement and is [sic] neither in fact · or in [sic] nature of alimony to, maintenance for or support of either the spouse or the child and is [sic] therefore dischargeable as a matter of law. Your Plaintiff herein would further charge that the other items, with the exception of the $1,000.00 child support payment per month is [sic] neither in fact nor in the nature of alimony to, maintenance for, or support of either the spouse or the child and is [sic] therefore dischargeable as a matter of law.

Your Plaintiff would further show unto this Honorable Court that the Divorce Decree which incorporates the Property Settlement and Separation Agreement which was never adjudicated in [sic] its merits and was on its face unreasonable in nature and thus portions of the Decree requiring payment of $1,000.00 per month child support as well [sic] any payments which are determined to be in the nature of alimony was [sic] unreasonable and that this Court should determine the amount which is unreasonable and order same to be dischargeable.

At the trial on the complaint, the debtor, Ernest G. Smith, testified as follows in regard to his intentions or desires relating to the obligations under the divorce judgment. In regard to the $1,000.00 per month child support obligation, he testified that he did not want to discharge the debt, but wanted to modify the amount of the payment. He testified that he wanted to discharge the lump sum award of $54,000.00 to his wife, as well as the obligations for her housekeeping services, insurance premiums on her automobile and

2. On this point the Chancellor's Partial Summary Judgment cited *Wray v. Wray*, 394 So.2d 1341 (Miss.1981) and *East v. East*, 493 So.2d 927 (Miss.1986).

insurance premiums on her home and contents.

Ernest Smith testified that he wished to modify the obligation regarding payment of medical, hospital and dental expenses of the child. He stated that he does not wish to modify or to discharge the obligation to provide a four-year college education to his child. In addition, he testified that he does not wish to modify or discharge the obligation concerning payment of life insurance premiums for himself and for his former wife for the benefit of their child. In regard to the obligation for payment on a house located at 3427 Wheatley Street in Jackson, Mississippi, held for the benefit of the child's college education, Mr. Smith testified that he wished to abandon the home and discharge the obligation.

## II.

The first issue for the Court to consider is whether the obligations owed by Ernest G. Smith, Jr. to his former wife and child pursuant to the Final Judgment of Divorce and Separation Agreement are "actually in the nature of alimony, maintenance or support," as contemplated under section 523(a)(5)(B), thus rendering those obligations nondischargeable.

Secondly, the Court is confronted with the issue of determining whether the obligations as set forth in the Final Judgment of Divorce and Separation Agreement are "reasonable," or whether the amounts and obligations set forth therein should be modified as requested by the debtor. In addressing this second issue, the Court must make an initial determination of whether this Court is the appropriate court to decide questions of reasonableness and modification of Chancery Court judgments.

Additionally, it is argued in this case that issues of reasonableness of obligations required under the Final Judgment of Divorce are barred under the doctrines of res judicata and/or collateral estoppel in that a modification request was previously heard and denied in Chancery Court and is currently on appeal to the Mississippi Supreme Court. This issue will also be addressed below.

## A.

In determining whether any of the obligations of Ernest G. Smith, Jr. to his former wife and child are dischargeable in bankruptcy, the Court first looks to the applicable statute under the Bankruptcy Code. Section 523(a)(5) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that ...

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. ...

11 U.S.C. § 523(a). Therefore, obligations that are actually in the nature of alimony, maintenance, or support, as provided under subsection (B) above, are not obligations that may be discharged in bankruptcy. *In re Harrell*, 754 F.2d 902 (11th Cir.1985); *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir. 1987).

In determining whether the obligations are actually in the nature of alimony, maintenance or support, the Court must look to federal bankruptcy law and the intent of the parties. *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989). However, state law may be looked to for guidance on the issue of whether an obligation is in the nature of alimony, maintenance or support. *In re Sullivan*, 62 B.R. 465 (Bankr.N.D. Miss.1986). Furthermore, it has long been the rule that the whole subject of domestic relations belongs to the law of the various states. *See, Simms v. Simms*, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899). Nothing in the Bankruptcy Code reflects any intent to alter this rule.

The Bankruptcy Code does not define "alimony, maintenance or support". Under federal case law, the proper test lies in proof of whether it was the intention of the parties that the payments be for support rather than a pure property settlement. *In re Schacter*, 467 F.Supp. 64 (D.Md.1979), *aff'd.*, 610 F.2d 813 (4th Cir. 1979); *Nichols v. Hensler*, 528 F.2d 304 (7th Cir.1976); *In re Coffman*, 52 B.R. 667 (Bankr.D.Md.1985).

The Fifth Circuit has discussed some of the evidentiary factors which the Bankruptcy Court must consider when evaluating whether divorce agreements constitute property settlements or alimony and support obligations. *See, In re Nunnally*, 506 F.2d 1024 (5th Cir.1975); *In re Smith*, 97 B.R. 326 (Bankr.N.D.Tx.1989). Some of these factors were enumerated in *In re Benich*, 811 F.2d 943 (5th Cir.1987).

> We pointed out in *In re Nunnally* the support-type considerations that a Texas court may take into account in making the property division and award, such as the disparity in earning power of the parties, their relative business opportunities, the probable future need for support of the spouse who receives payments, their relative physical condition, the recipient's educational background and probable future need for support, the fault for the breakup, and the benefits an innocent spouse would have received had the marriage continued. These are not legal criteria, as they are characterized by the parties, but relevant evidentiary factors that assist the bankruptcy court as trier of fact in determining the true nature of the debt created by the agreement.

*Id.* at 945.

Furthermore, the Court must examine *only* the circumstances surrounding the agreement *at the time of the divorce* in order to ascertain the intentions of the parties. *Sylvester, supra; In re Chedrick*, 98 B.R. 731 (W.D.Pa.1989).

Applying the *Nunnally/Benich* factors to the separation agreement presented in this case, the Court concludes that the provisions in the Separation Agreement at issue were clearly intended for the future support of the wife and child. The husband was a licensed and practicing certified public accountant. The wife had been working as a legal secretary. The husband's future earnings potential and opportunities were expected to be greater than those of the wife. The parties believed that the wife would continue to incur future obligations including insurance, house escrow, necessary maid service and related payments. The wife anticipated a substantial income in the future as the wife of a certified public accountant who owned and operated his own accounting business.

Moreover, the structure of the payment obligations reveal a continuing need for support on the part of the wife. All payments due under Paragraph 3 of the Separation Agreement are designated as lump sum alimony and were clearly intended to be paid to the wife as alimony. All payments required under Paragraph 4 were clearly intended by the parties to be in the nature of support payments to assist the wife in meeting her continuing financial obligations for support of herself and the child. These obligations constitute payments made in the nature of alimony and support.

Many of the remaining provisions of the Agreement were clearly intended by the parties to constitute child support. Paragraph 2 specifically provides that "child support" shall be paid in the amount of $1,000.00 per month. Paragraph 5 requires the husband to pay all medical expenses incurred for the minor child in excess of the insurance maintained by Deborah Smith or her employer. Paragraph 7 requires Mr. Smith to pay for a four-year college education for Brittney. Paragraph 8 requires the husband to maintain certain policies of life insurance and requires the husband to name the minor child as the sole beneficiary. This was clearly intended by the parties to ensure continued support of the child in the event of the death of the husband. Paragraphs 2, 5, 7 and 8 were intended by the parties to constitute an obligation for child support.

Paragraph 10 of the Agreement provides that the wife shall convey her interest in the Wheatley Street property to the husband. However, the husband agreed to hold said property for the use and benefit of the child and, that in the event of his death, the property will go to the child. Prior to their divorce, the parties had acquired this property specifically for the purpose of ensuring the availability of funds to provide a college education for the child. It was contemplated by the parties that by the time Brittney was ready for college, there would be equity in this property and it could be sold to pay for her college education. Accordingly, Paragraph 10 was intended by the parties to be a child support obligation. Additionally, there is a clear inference that Ernest Smith's obligation to indemnify Deborah Smith on the Wheatley Street property was to be a long-range support obligation. *See, In re Humphres*, 29 B.R. 620 (Bankr.N.D.Miss. 1983).

The obligation to pay insurance premiums on an automobile and a house and certain other escrow items illustrates the continuing support relationship between the parties. *See, In re Smith, supra.*

Accordingly, the Court concludes that, as a matter of law, all obligations in dispute in this case constitute obligations which are in the nature of alimony, maintenance or support of the former wife and child.[3] Obligations of this nature are not dischargeable under section 523(a)(5) of the Bankruptcy Code.

### B.

The debtor argues that, notwithstanding the Code's prohibition against discharge of alimony and support payments, this Court may make a determination as to whether the obligations imposed upon the debtor by the Chancery Court orders are reasonable under the current financial conditions and circumstances of the parties. He urges that to the extent the court may determine that these obligations are not reasonable, they may be discharged.

The Court is faced with a choice between two distinct lines of authority on the issue of dischargeability of a debt in the nature of alimony, support and maintenance pursuant to Section 523(a)(5). The debtor contends that even if this Court concludes that the payments at issue are in the nature of alimony, maintenance or support, the Court must also determine that such obligations are "reasonable" under the circumstances in order to find them nondischargeable. *See, In re Sullivan*, 62 B.R. 465 (Bankr.N. D.Miss.1986). However, another line of subsequent cases holds that this Court's scope of review is limited to determining whether the debt is in the nature of alimony, support or maintenance, and that this Court cannot look to evidence of present need or changed circumstances to determine reasonableness of the alimony, support or maintenance award. *See, Sylvester, supra.*

In *In re Sullivan, supra*, the Bankruptcy Court for the Northern District of Mississippi held that a bankruptcy court has the authority to look to the "reasonableness" of a child support award and to apportion and discharge a support award to the extent that it appears "manifestly unreasonable". The Court relied on a four-part test for dischargeability of a support award, first set forth by the Sixth Circuit in *In re Calhoun*, 715 F.2d 1103 (6th Cir. 1983).[4]

---

**3.** The Court notes that, in his testimony at trial, Ernest G. Smith stated that he did not wish to discharge or modify the obligations toward his child's college education or for payment of life insurance premiums for the benefit of his child. Therefore, as to those obligations there is no real dispute here. Smith did, however, testify that he wished to discharge the obligations regarding lump sum alimony, housekeeping services, insurance premiums, and the Wheatley street home. In view of the Court's finding above that these obligations are in the nature of alimony, maintenance or child support, they are not obligations which may be discharged under section 523(a)(5). Additionally, Smith testified that he wished to modify, rather than discharge, the obligations regarding payment of medical expenses and the $1,000.00 per month child support. Modification of such obligations is discussed below.

**4.** The four-part test directs the Court to consider whether: (1) the intent of the state court or the parties was to create a support obligation; (2)

Under this analysis, the Court may, upon finding that the debt is in the nature of support, or alimony, undertake further inquiry into the needs of the minor children, the debtor's living expenses, and otherwise his ability to pay now and in the future. *In re Sullivan*, 62 B.R. at 474. This necessarily involves the bankruptcy court in the litigation of complex domestic relations issues traditionally reserved for state court determination.

A substantial and conflicting line of authority exists however, which prohibits bankruptcy courts from reviewing and relitigating state law determinations of the "reasonableness" of support and alimony awards. Indeed, since the *Calhoun* decision from the Sixth Circuit, at least four other Circuit Courts of Appeal and many bankruptcy and district courts have taken a contrary view. *See, Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *Forsdick v. Turgeon*, 812 F.2d 801 (2nd Cir.1987); *Draper v. Draper*, 790 F.2d 52 (8th Cir. 1986); *In re Harrell*, 754 F.2d 902 (11th Cir.1985); *In re Chedrick*, 98 B.R. 731 (W.D.Pa.1989); *In re Smith*, 97 B.R. 326 (Bankr.N.D.Tx.1989). These cases now clearly constitute the majority view, and this court finds the rationale of these cases to be persuasive.

In *Forsdick v. Turgeon, supra*, the Second Circuit explained its ruling as follows:

> *Calhoun* is an example of a minority view on this question, as the husband concedes, and we find the majority view to be far more persuasive. We therefore reject the reasoning of the Sixth Circuit and of those other courts that have adopted its stance. *See, e.g., Warner v. Warner (In re Warner)*, 5 B.R. 434, 442–43 (Bankr.D.Utah 1980).
>
> An inquiry of the sort urged by the husband would put federal courts in the position of modifying the matrimonial decrees of state courts, thus interfering with the delicate state systems for dealing with the dissolution of marriages and the difficult and complex results that

flow therefrom. *See Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 907 (11th Cir.1985). State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from Congress to do so in order to achieve a valid federal objective.

> We find no such mandate here. To the contrary, Congress has clearly required the bankruptcy court to protect the rights of a former spouse receiving alimony at the expense of a debtor seeking a fresh start. The husband's argument would turn this legislative intent on its head by having the bankruptcy court entertain arguments about, and deciding issues of dischargeability on the basis of, a continuing need for support instead of protecting the award previously found by the state courts to be appropriate.

812 F.2d at 803–04.

The Eleventh Circuit in *In re Harrell, supra*, also held that the bankruptcy court should not inquire into financial circumstances to determine the need for support.

> The language used by Congress in § 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is "actually in the nature of alimony, maintenance, or support." . . .
>
> Considerations of comity reinforce our interpretation. Debtor's attempt to expand the dischargeability issue into an assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts.
>
> We conclude that Congress intended that bankruptcy courts make only a simple inquiry into whether or not the obligation at issue is in the *nature* of support. This inquiry will usually take the form of deciding whether the obligation

---

whether the support provision has the actual effect of providing necessary support; (3) the amount of support is so excessive as to be unreasonable under traditional concepts of sup-

port; and finally, (4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law. 62 B.R. at 470.

was in the nature of support as opposed to being in the nature of a property settlement. Thus, there will be no necessity for a precise investigation of the spouse's circumstances to determine the appropriate level of need or support. It will not be relevant that the circumstances of the parties may have changed, *e.g.*, the spouse's need may have been reduced at the time the Chapter VII petition is filed. Thus, limited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible.

754 F.2d at 906–07. *See also, In re Smith,* 97 B.R. 326, 330 (Bankr.N.D.Tx.1989).

In a most recent circuit court decision on this issue, the Tenth Circuit adopted the rationale of its sister circuits, holding as follows:

Although *Calhoun* supports appellant's argument, it is a minority approach which we decline to follow. A requirement that the former spouse's present need for support or changed circumstances be analyzed in determining dischargeability finds no support in either the language or the legislative history of § 523(a)(5). *See, In re Harrell,* 754 F.2d 902, 906–07 (11th Cir.1985). Furthermore, as the court in *Calhoun* recognized, such an inquiry would put federal courts in the position of modifying state matrimonial decrees. *Calhoun,* 715 F.2d at 1109 n. 10. We decline to make such an intrusion into the area of domestic relations absent a clearer congressional mandate to do so. Therefore, we join the other circuits that have rejected the approach of the Sixth Circuit in *Calhoun. E.g., Forsdick v. Turgeon,* 812 F.2d 801, 804 (2nd Cir.1987); *Draper v. Draper,* 790 F.2d 52, 54 n. 3 (8th Cir.1986); *In re Harrell,* 754 F.2d 902, 907 (11th Cir. 1985).

*Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989).

A recent decision by Judge Abramson of the Bankruptcy Court for the Northern District of Texas construed the precedents before this court and found as follows: "This Court finds that the reasoning in the *Harrell* and *Forsdick* cases to be more persuasive than *Calhoun.* The Bankruptcy Court is not the proper forum in which to re-examine the parties' divorce arrangements." *In re Smith,* 97 B.R. 326, 330 (Bankr.N.D.Tx.1989). *See also, In re Portaro,* 108 B.R. 142 (Bankr.N.D.Ohio 1989).

This Court declines to review the "reasonableness" of alimony and support obligations of the debtor and adopts the majority view, as stated above, that a federal bankruptcy court is not the proper forum in which to re-examine the parties' divorce arrangements. Accordingly, the debtor's request for modification of certain obligations under the Final Judgment of Divorce and Separation Agreement is denied, and all of the obligations therein are determined by this Court to be nondischargeable under section 523(a)(5) as obligations in the nature of alimony, maintenance or support.

### C.

The Court further finds that it is precluded from inquiring into the "reasonableness" of the support and alimony obligations of the debtor in this case under principles of collateral estoppel. Bankruptcy courts have consistently applied collateral estoppel to preclude relitigation of certain facts and legal conclusions considered by the bankruptcy court on the question of dischargeability. *In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *In re Held,* 734 F.2d 628 (11th Cir.1984); *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980). The elements that must be present for the application of collateral estoppel are well established: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. *In re Held,* 734 F.2d at 629.

As stated above, just a few months earlier, the same parties litigated at length in state court the debtor's motion to modify the December 30, 1987, Final Judgment of

Divorce and Separation and Property Settlement Agreement. The issues raised in the modification proceeding were the debtor's changed financial circumstances arising subsequent to the original decree, the relative financial condition of the parties, the debtor's inability to meet his support and alimony obligations in light of the change in circumstances, and the need of the plaintiff and minor child for such support and alimony. All of those issues were decided in favor of Deborah Britt Smith in the recent Chancery Court judgment. In attempting to have this court review the "reasonableness" of the support and alimony obligations, the debtor seeks to have this Court relitigate the very issues actually litigated and determined in favor of Deborah Britt Smith in the Chancery Court proceeding. The Chancery Court's determination of these issues were critical and necessary parts of the August 10, 1989 order. Moreover, the debtor has appealed this order of the Chancery Court to the Mississippi Supreme Court.

In addition to the above ruling whereby the Court has declined to consider the reasonableness of obligations of this debtor under the state court divorce judgment, the Court further finds that relitigation of the issue of reasonableness is precluded in the circumstances here under the doctrine of collateral estoppel.

For the reasons stated above, this Court is of the opinion and so finds that all of the obligations sought to be discharged by the debtor herein are in the nature of alimony, maintenance or support within the meaning of 11 U.S.C. § 523(a)(5), and are not dischargeable in this bankruptcy proceeding.

In addition to the foregoing, the Court is of the opinion and finds that a non-dischargeable money judgment in favor of Deborah Britt Smith for the amount of unpaid support and alimony payments due since the filing of the Chapter 7 petition herein, together with interest at the legal rate should be awarded.

A separate judgment shall be entered consistent with these findings of fact and conclusions of law pursuant to Rule 58 of the Federal Rules of Civil Procedure and Bankruptcy Rule 9021.