In re Dr. Donald R. SMITH, Debtor.

Bennie Ruth SMITH, Plaintiff,

v.

Dr. Donald R. SMITH, Defendant.

Bankruptcy No. 386–30599–HCA–7.
Adv. No. 388–3170.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 6, 1989.

Charles B. Hendricks, Dawson & Sodd, Dallas, Tex., for plaintiff, Bennie Ruth Smith.

Robert Yaquinto, Jr., Sherman & Yaquinto, Dallas, Tex., for defendant, Dr. Donald R. Smith.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

In this case, the Court must inquire into whether several obligations undertaken by the debtor as part of an agreement incident to divorce are a dischargeable property settlement or nondischargeable obligations for support. This Court rules that the obligations were intended to provide the debtor's wife with future support, and therefore, are not dischargeable.

## FACTUAL BACKGROUND

Plaintiff, Ms. Bennie Ruth Smith (the "Wife") and Defendant, Dr. Donald R. Smith (the "Husband") obtained a decree of divorce on February 18, 1977 after twenty-five years of marriage. Both were forty-nine years old at the time, and they had three adult children. The Wife is trained as a nurse but has been physically unable to work as a nurse since before the time of the divorce. The Husband was a physician until a 1984 accident left him physically unable to work in that occupation. The Husband filed a voluntary Chapter 11 petition on February 20, 1986. His case was converted to a Chapter 7 on October 2, 1987.

The issues submitted to this court for decision concern several obligations undertaken by the Husband as part of an "Agreement Incident To Divorce" entered into at the time of divorce (the "Agreement"). The Court must decide whether all or any part of the following obligations are dischargeable under 11 U.S.C. § 523(a)(5):

1. A promissory note executed by the Husband in the amount of $129,514.33, bearing interest at seven percent, to be paid in two hundred thirty-nine monthly installments of $1,004.13 each, with a final installment of $1,004.53 to the Wife. Payment of the note was secured by an equitable lien on certain intangible property described in the Agreement and by equitable liens and Deeds of Trust on certain real property retained by the Husband under the Agreement.

2. An obligation running through the year 1996 to provide the Wife with:

a new medium priced automobile of Wife's choice each year, together with full maintenance thereof; collision, liability and medical insurance coverage thereon and the reasonable use of a major brand gasoline credit card therefor (not to exceed $50.00 per month);

3. An obligation to provide the Wife with major medical, health, and hospitalization insurance coverage through 1996;

4. An obligation to provide the Wife with disability insurance through 1996; and

5. An obligation to provide the Wife with "[m]edical expense insurance coverage and medical services substantially identical to those provided by Smith Clinic Medical Association to its employees" through 1996.

The Wife contends that the obligations at issue are "support" payments, nondischargeable under 11 U.S.C. § 523(a)(5).[1]

---

1. 11 U.S.C. § 523(a)(5) excepts from discharge debts owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce, decree or other order of a court of record, deter-

The Husband argues that the obligations are dischargeable. He points to extensive language in the Agreement that describes the Agreement as a property settlement. He characterizes the note obligation as a lump sum payment secured by land. He further argues that payment of the note is not terminable—his obligation survives both himself and the Wife. With regard to the automobile, gasoline credit card and automobile insurance, he argues again that the language of the Agreement states that the obligation is in lieu of a division of community property. Finally, the Defendant asks the Court to determine the reasonableness of any obligations that are found to be support; he argues that a new car every year, free insurance and gasoline purchases exceed traditional notions of support.

## DISCUSSION

The Husband correctly argues that the Agreement purports to be a division of the property acquired during the marriage between the parties. As the Agreement states:

The parties wish to mutually settle their rights, liabilities and obligations in and to all the separate and community property owned and debts owed by the parties or either of them and wish to partition and divide that property and distribute those liabilities and obligations in a manner that is just and right, with due regard for the rights of the parties;

Section II of the Agreement, which contains the disputed provisions, is entitled "Division of Assets." The first part of the section divides the couple's community property into two schedules, the first of which goes to the Wife while the property in the second schedule goes to the Husband.

The Agreement declares the Husband's obligations are undertaken "[i]n further settlement, adjustment, compromise and satisfaction of a portion of the community property rights and interests of the par-

ties...." Following the description of the promissory note is the statement:

Husband acknowledges that the above payments to be made by him to Wife are in lieu of payments for, and in substitution of the partition to Wife of, her undivided one-half (½) community property interest in and to a portion of the parties' property and that therefore said payments are necessarily referable to the parties' property.

The Husband agrees to never characterize his obligations under the Agreement as permanent alimony. Husband also covenants that his obligations will survive both himself and the Wife and pass on to either party's estate on that party's death. Finally, the Agreement states on page 8 that:

All provisions of this Section II and of Section III hereof are intended to effect only a division of the parties' property and estate. The purchase or sale of any asset or group of assets is not intended thereby, and any money payment specified in this Section II or in Section III thereof is owelty required to equalize values.

■ Despite the recitals calling the Agreement a property settlement, the Court is required to go beyond the characterization placed on the Agreement by the parties and examine the substance of the Agreement. *In re Nunnally*, 506 F.2d 1024 (5th Cir.1975). The Fifth Circuit stated in *Nunnally:*

support in the future can play a significant role in the divorce court's property division and that what may appear to be a mere division of assets may in fact, under a Texas decree, contain a substantial element of alimony substitute, support or maintenance, however termed.

506 F.2d at 1027.

The Fifth Circuit discussed some of the evidentiary factors to consider when evaluating whether divorce agreements are property settlements or alimony/support in

mination made in accordance with State or territorial law by a governmental unit, or property

settlement agreement ..."

*Nunnally* and in *Matter of Benich,* 811 F.2d 943 (5th Cir.1987). These factors are:

the disparity in earning power of the parties, their relative business opportunities, the probable future need for support of the spouse who receives payments, their relative physical condition, the recipient's educational background and probable future need for support, the fault for the breakup, and the benefits an innocent spouse would have received had the marriage continued.

811 F.2d at 945; *citing Nunnally* at 1026. The Husband admits the applicability of the *Nunnally/Benich* factors in the Agreement where he covenants:

Husband further acknowledges and covenants, contracts and agrees that said payments are just and right considering the difference in earning power between the parties, the possible future needs for Wife's support, the current state of Wife's health, Husband's fault in breaking up the marriage, the benefits that might have accrued to Wife from a continuation of the marriage ...

■ Applying the *Nunnally/Benich* factors to the Agreement, this Court holds that the provisions at issue were intended for the Wife's future support. All of the *Nunnally* and *Benich* factors were present when this Agreement was created. The Husband was a physician, while the Wife was unable to work. The Husband's future earnings and opportunities were expected to be much greater than those of the Wife. The parties anticipated that the Wife would incur future medical bills requiring support. The Husband admits in the Agreement that he was at fault in breaking up the marriage. The Wife anticipated substantial income in the future as the wife of a physician.

Moreover, the structure of the transfers from Husband to Wife reveal a continuing support obligation of Husband to Wife. The promissory note contracted for in the Agreement was to be paid off in 240 monthly installments. Such a continuing obligation over a period of years cannot be characterized as a lump sum as the Husband suggests. Regular monthly payments are evidence of support rather than a property settlement. See *In re Bell,* 61 B.R. 171 (Bankr.S.D.Tex.1986). The Husband argues that the note cannot be support since it does not terminate on the death of either party. While this contention has merit, it is only one factor in the Husband's favor. This one factor does not outweigh the multiple factors outlined above that indicate that the Agreement was intended as support. The impact of this factor is further minimized by the fact that the likely beneficiaries of the Wife's will would be the couple's three adult children, who are also provided for under the Agreement as beneficiaries of various life insurance policies.

The new car every year, gasoline credit card and automobile insurance further illustrates the continuing support relationship between the parties.

Finally, the Court notes that even without the questioned obligations, the parties already had an extensive property settlement. The Husband acknowledges this by contending that the Agreement embodied a fair property settlement. As the Defendant's Trial Brief declares on page 7:

what occurred in the Agreement Incident to Divorce was a fair division of the "loot" acquired during twenty-five years of marriage. The Defendant in this case took most of the debt and some of the property and the Plaintiff took most of the property and virtually none of the debt.

Because the Husband acknowledges that the Agreement already gave most of the property to the Wife, and because the schedules in the Agreement confirm that fact, the obligations for future payments assumed by the Husband should be characterized as support.

■ The final issue under consideration is the Husband's request that the Court consider the reasonableness of the support awarded to the Wife in the Agreement. He asks the Court to consider whether the support awarded by the Agreement is so excessive as to be unreasonable.

Unfortunately, the Fifth Circuit did not deal with this issue in either *Nunnally,*

supra, or *Benich,* supra. Other federal courts have disagreed over the resolution of this issue. A leading case arguing for review of the reasonableness of support is *In re Calhoun,* 715 F.2d 1103 (6th Cir. 1983). In *Calhoun,* the Sixth Circuit considered the dischargeability of loan obligations assumed by a husband as part of a separation agreement with his wife. The Court held that where "the assumption [of a debt] substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support." *Id.* at 1110. The court further stated in a footnote:

> If the circumstances of the debtor have changed from the time the obligation to the former spouse to pay joint debts was created so as to make such support now inequitable the bankruptcy court may consider the debtor's current general ability to pay insofar as it relates to the continuing obligation to assume the joint debts.

*Id.* at 1110, n. 11. The court justified its position by pointing out the overriding bankruptcy policy of providing the debtor with a fresh start. *Id.* at 1110.

The Eleventh Circuit criticized the *Calhoun* analysis in *In re Harrell,* 754 F.2d 902 (11th Cir.1985). In *Harrell,* the court refused to consider the reasonableness of the amount of support awarded to a wife. *Id.* at 906. The court interpreted the language of section 523(a)(5) as requiring only a "simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support." *Id.* at 906. The court argued that:

> an assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts.

*Id.* at 907.

The *Harrell* analysis has been adopted by the Second Circuit in the case of *Fors-*

*dick v. Turgeon,* 812 F.2d 801 (2d Cir.1987). In *Forsdick,* the Second Circuit refused to consider a wife's improved financial circumstances in finding an award "in the nature of alimony" to be nondischargeable in the husband's Chapter 7 bankruptcy proceeding. The Court expressed a reluctance to interfere in "[s]tate-crafted family law mechanisms ... unless there is an unmistakable mandate from congress to do so ..." *Id.* at 804.

This court finds the reasoning in the *Harrell* and *Forsdick* cases to be more persuasive than *Calhoun.* The bankruptcy court is not the proper forum in which to re-examine the parties' divorce arrangements.[2]

### CONCLUSION

This court finds that although denominated as a property settlement, the obligations undertaken by Dr. Smith as part of the Agreement Incident To Divorce are actually in the nature of support and are, therefore, nondischargeable under 11 U.S.C. § 523(a)(5).

---

**2.** Accord *In re Bell,* 61 B.R. 171 (Bankr.S.D.Tex. 1986), where the bankruptcy court determined that the state court was the proper forum to pursue modification of obligations created by an agreement incident to divorce.