**In re Noel A. SCHWEIG, M.D., Debtor.**

**Nannette H. HOFFMAN, Plaintiff,**

**v.**

**Noel A. SCHWEIG, M.D., Defendant.**

**Bankruptcy No. 88–00045.**
**Adv. No. 88–0026.**

United States Bankruptcy Court,
District of Columbia.

Sept. 15, 1989.

Marcia K. Docter, Washington, D.C., for plaintiff.

Janet Nesse, Washington, D.C., for defendant.

## MEMORANDUM OPINION CONCERNING COMPLAINT TO DETERMINE DISCHARGEABILITY

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The Court has under consideration the Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(5). Based upon the following findings of fact and conclusions of law rendered in accordance with Bankruptcy Rule 7052, the Court finds the debt to be nondischargeable.

## FACTS

Plaintiff Nannette H. Hoffman and Defendant Noel A. Schweig, M.D., who is the Debtor in Bankruptcy Case No. 88–00045, were married in 1950. They had two children born of the marriage, a son born August 2, 1953, and a daughter born May 4, 1955. The Plaintiff and the Defendant were divorced in the Circuit Court for Fairfax County, Virginia, on July 9, 1971. In connection with their divorce, the Plaintiff and the Defendant entered into a Separation and Settlement Agreement dated July 8, 1971, ("the 1971 Agreement") which de-termined property rights, maintenance, support, custody, welfare of the children, and alimony. In fact, by the end of 1971 all of the property had been divided and the only obligations remaining were those family support obligations of the Defendant to pay support and maintenance for the Plaintiff and the parties' children, to maintain a life insurance policy in the amount of $50,-000.00 with the Plaintiff as beneficiary, and to pay attorneys fees in connection with any default on those obligations.

Under the 1971 Agreement the payments for support and maintenance to be made by the Defendant to the Plaintiff were to be reduced drastically in the event of the Plaintiff's remarriage (commencing the first month after remarriage) and were to cease altogether upon the death of the Plaintiff or the Defendant.

A little over five years after the 1971 Agreement was executed, when the Defendant was approximately $11,417.00 in arrears on the support and maintenance payments owed to the Plaintiff under the 1971 Agreement, the Plaintiff called the Defendant. In the conversation she indicated to the Defendant that she had met a man she wished to marry but realized that remarrying would effectively end the alimony paid to her by the Defendant under the 1971 Agreement. She informed the Defendant that, regardless of whether she remarried, she would need the Defendant's continued financial support in order to meet her expenses and to live in the style to which she was accustomed because the man she hoped to marry earned only $30,000.00 as a government employee. She reached the conclusion that she would need the Defendant's continued support and maintenance based upon the calculations of her father, an accountant who was her financial adviser.

As the exhibits and other evidence reflect, after that conversation, the parties began negotiations to change the financial arrangements under the 1971 Agreement. In February of 1977, the parties executed a document titled simply "Agreement" ("the 1977 Agreement"), stating their desire to terminate the 1971 Agreement "and all ob-

ligations thereunder" and to enter into a new agreement. Unlike the 1971 Agreement which designated certain payments to be made by the Defendant to the Plaintiff as support and maintenance, the 1977 Agreement simply refers to the note and other obligations, without giving any of the obligations a label. The Defendant's intent was to pay a finite amount of money on a set monthly basis as a way of getting out of the support and maintenance obligations under the 1971 Agreement. The Plaintiff's primary intent was to ensure that she would continue to receive monthly payments from the Defendant for her support and maintenance. Neither party was then attempting to attack the property division under the 1971 Agreement, nor were they mutually agreeing to revisit that issue, nor were they involved in any other disputes. The only issue they were addressing was that of support and maintenance obligations under the 1971 Agreement.

In the 1977 Agreement the Defendant acknowledged that he was in arrears on alimony payments in the amount of $11,-417.00 and agreed to pay the amount in full upon execution. The $11,417.00 has been paid. He also agreed to pay to the Plaintiff an additional $100,000.00, evidenced by a note in that sum, payable in regular monthly installments of $1,000.00 per month with interest at 6 percent per annum and an annual adjustment based upon changes in the Consumer Price Index. He further agreed to maintain, until the $100,-000.00 note is paid in full, a life insurance policy in the face amount of $100,000.00, with the Plaintiff designated as beneficiary thereon.[1]

Monthly payments of $1,000.00 on the note began on February 22, 1977, which the Plaintiff has used for her support and maintenance, at least in part. According to the testimony of the Defendant, the Plaintiff gave ninety percent of the payments to the parties' non-minor son, but the Court need not determine the accuracy of that testimony. By the time of the dischargeability trial, the Defendant had made monthly payments totalling approximately $100,000.00 on the note, reducing the principal balance by approximately fifty percent after payment of accrued interest. The note is now in default.

The parties mutually intended that the payments under the 1977 Agreement were to be for support and maintenance. The 1977 Agreement is a revised separation agreement, and, in any event, the debts thereunder stem from and are in connection with the original separation agreement referred to herein as the "1971 Agreement."

### Issues Presented

The issue before the Court is two-fold: (1) whether, at the time the parties entered into the 1977 Agreement, they intended the obligations due thereunder, including the payments due under the $100,000.00 note executed in accordance with that agreement, to be in the nature of support or maintenance of the Plaintiff, not a property division, and (2) whether the debts under the 1977 Agreement are in connection with a separation agreement. If the answer to both issues is "yes," the obligations under the 1977 Agreement would be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

The Defendant argues that his obligations for support and maintenance of the Plaintiff contained in the parties' agreement at the time of their divorce were specifically terminated by the 1977 Agreement. According to the Defendant, the Plaintiff exchanged her right to alimony and support for the note so that she would continue to receive money from the Defendant regardless of her marital status. It is his position that his intent through the 1977 Agreement was not to provide support for the Plaintiff but merely to place a specific limit on the amount of money he would have to pay the Plaintiff and at the same time to terminate the alimony obli-

---

**1.** The 1977 Agreement also continued the Defendant Debtor's obligation to provide educational support for the children, who were no longer minors. The child support obligation is not at issue here.

gations owed to her under the 1971 Agreement.

In contrast, the Plaintiff insists that the 1977 Agreement is merely a modification of the alimony and support provisions of the 1971 Agreement and, as such, that all obligations due thereunder are nondischargeable under 11 U.S.C. § 523(a)(5).

### Discussion

It is undisputed that if an obligation is a debt for alimony, maintenance or support of a spouse or child in connection with a separation agreement, it is not dischargeable in bankruptcy. Section 523(a)(5) of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

     *     *     *     *     *     *

(5) to a ... former spouse ... of the debtor, for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement [or] divorce decree ... or property settlement agreement, but not to the extent that—

     *     *     *     *     *     *

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

In other words, if it is determined that the obligations arising under the 1977 Agreement are actually in the nature of the support and maintenance obligations owed to the Plaintiff in connection with the 1971 Agreement (or the 1977 Agreement as a revised separation agreement), the obligations will not be discharged.

The Plaintiff, as the party opposing the discharge of the obligations owed to her, has the burden of proof. *In re Belfry,* 862 F.2d 661, 662 (8th Cir.1988); *In re Ellis,* 103 B.R. 977 (Bankr.N.D.Ill.1989).

The crucial question of "whether such obligations are in fact for 'support' and therefore not dischargeable in bankruptcy, is a question of fact to be decided by the Bankruptcy Court as trier of fact in light of all the facts and circumstances relevant to the intention of the parties." *In re Williams,* 703 F.2d 1055, 1058 (8th Cir.1983); *accord, In re Yeates,* 807 F.2d 874, 878 (10th Cir.1986) ("This determination must be made looking at the substance of the agreement 'viewed in the crucible of the surrounding circumstances' ") (quoting *Matter of Crist,* 632 F.2d 1226, 1229 (5th Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 *and cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981)). And such inquiry is governed by bankruptcy law, not state law. *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989); *In re Harrell,* 754 F.2d 902, 904–05 (11th Cir.1985); *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5862–5864.

In order to make the determination of whether the debt falls into the category of support or maintenance on the one hand or of a property division on the other, the Court must ascertain the intent of the parties in regard to the obligation at the time of the 1977 Agreement. *See, e.g., Tilley v. Jessee,* 789 F.2d 1074, 1075 (4th Cir.1986) (intent must be mutual); *see also In re Melichar,* 661 F.2d 300, 303 (4th Cir.1981); *In re Anderson,* 62 B.R. 448, 454 (Bankr.D.Minn.1986). If the agreement itself does not plainly reveal the mutual intent of the parties, an examination of the circumstances out of which the agreement arose can be used to ascertain the parties' intent. *In re Shaw,* 66 B.R. 399 (Bankr.N.D.Ohio 1986). As a guide for determining intent, courts often examine the surrounding facts and circumstances in light of a list of factors, such as—

(1) whether there was an alimony award entered by the state court,

(2) whether there was a need for support at the time of the agreement in issue,

(3) whether the payments are to be made periodically over an extended period or in a lump sum, or

(4) whether the creditor spouse relinquished rights of support in payment of the obligation in question.

*See, e.g., In re Coffman,* 52 B.R. 667, 674–75 (Bankr.D.Md.1985) (identifying 18 factors); *In re Nelson,* 16 B.R. 658, 660–61 (Bankr.M.D.Tenn.1981), *rev'd in part on other grounds,* 20 B.R. 1008 (1982) (identifying 11 factors). However, the lists are mere guidelines and should not be used as a checklist of legal criteria that need to be proven or even considered in every case. *In re Jackson,* 102 B.R. 524 (Bankr.M.D. La.1989).

■ Once it is shown that it was the intent of the parties that the obligation serve as alimony or support, it does not matter what label the obligation is given, *see, e.g., In re Smith,* 97 B.R. 326, 328 (Bankr.N.D.Tex.1989) (debt labeled property division, determined support), or what form the obligation takes, *i.e.,* whether payment of the obligation is to be made in a lump sum or with yearly or monthly installments, *see, e.g., In re Goin,* 58 B.R. 136 (D.Kan.1985) ($80,000, in yearly installments of $5,000.00), or whether the obligation terminates at death or remarriage, *see e.g., In re Myers,* 61 B.R. 891 (Bankr.N. D.Ga.1986). Moreover, because intent at the time of the agreement is the key to determining the character of the debt, this Court need not consider what the funds are actually used for later or whether the amount of support was reasonable or whether the Plaintiff's financial condition has improved. *See Harrell,* 754 F.2d at 906; *Forsdick v. Turgeon,* 812 F.2d 801, 804 (2d Cir.1987); and *Jackson,* 102 B.R. at 533; *contra, In re Calhoun,* 715 F.2d 1103 (6th Cir.1983) (consider "present need" to determine dischargeability). By limiting the analysis required under § 523(a)(5) to the simple inquiry of whether the obligation is in the nature of support, the federal bankruptcy court need not be embroiled in domestic relations matters. *Smith,* 97 B.R. at 330 (quoting *Harrell,* 754 F.2d at 907). This policy is "grounded in the long-standing policy of confining the whole subje of domestic relations to the state courts of domicile of husband and wife." *In re Stone,* 79 B.R. 633, 640 (Bankr.D.Md.1987), *appeal dismissed,* 98 B.R. 243 (1988).

■ An examination of the circumstances presented here makes the search for the intent of the parties at the time of the 1977 Agreement a fairly simple task. Because the 1977 Agreement does not expressly label the obligations thereunder as those for support and maintenance, in determining the character of the obligations under that agreement, great weight must be given to the fact that well before the 1977 Agreement was executed—in fact by the end of 1971—all the parties' property had been divided and only obligations for support and maintenance remained under the 1971 Agreement. Obviously, then, the only obligations left to be negotiated between the parties for the 1977 Agreement were those for support and maintenance. Moreover, there is no evidence to suggest that either party was attempting to attack the property settlement or that the parties viewed themselves as renegotiating the property settlement. Even the Defendant admits that, when the Plaintiff first discussed the possibility of new financial arrangements for the obligations remaining under the 1971 Agreement, she indicated that she would need to have his continued financial support after any possible remarriage. Moreover, the 1977 Agreement structured the note obligation to include regular monthly payments over an extended period. Such structure is additional evidence that the payments under the note were to provide continued support for the Plaintiff. *See Smith,* 97 B.R. at 328.

The Court expressly finds that, even though the Defendant may enjoy an added benefit under the 1977 Agreement of having his support obligations reduced to a sum certain, it was the parties' intent when they executed the 1977 Agreement to provide continuing support for the Plaintiff, even upon remarriage, by revising the support obligations under the 1971 Agreement. Plaintiff might even argue that since only support and maintenance obligations were being settled, the debts under the 1977 Agreement partake of that character even if both parties did not view the Plaintiff as

needing continued support. *Cf. Lyeth v. Hoey,* 305 U.S. 188, 196, 59 S.Ct. 155, 83 L.Ed. 119 (1938) (heir's claim retains inheritance character even when the heir receives payment pursuant to a compromise agreement emanating from the inheritance claim). The Court need not decide that issue.

In determining whether the debts under the 1977 Agreement are "in connection with" a separation agreement as required by the statute, it is academic whether the debts under the 1977 Agreement are viewed as in connection with the 1971 Agreement, the parties' original separation agreement, or whether the 1977 Agreement is itself viewed as a revised separation agreement. Either view is correct. Under either interpretation, the debts under the 1977 Agreement were for support and maintenance made "in connection with" a separation agreement. That is all § 523(a)(5) requires in order for an agreement for support and maintenance to be excepted from discharge. Even if the debts could only be viewed as connected to the revised separation agreement (the 1977 Agreement), the statute adds no additional requirement that the separation agreement in connection with which the support obligation is due be the original separation agreement entered into before the parties' divorce.

### Conclusion

Accordingly, the Court concludes that the Plaintiff has met her burden of proving that the obligations under the 1977 Agreement are maintenance and support obligations in connection with a separation agreement. The obligations will, thus, be held nondischargeable under 11 U.S.C. § 523(a)(5).

An Order consistent with this Memorandum Opinion shall be issued this date.