In re Raynaldo GARZA, a/k/a Ray Garza and Raynaldo T. Garza, Debtor.

Donna GARZA, Plaintiff,

v.

Raynaldo GARZA, a/k/a Ray Garza and Raynaldo T. Garza, Defendant.

Bankruptcy No. 97–33307 RCM–7.
Adversary No. 97–3307.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 30, 1998.

**MEMORANDUM OPINION**

ROBERT C. McGUIRE, Bankruptcy Judge.

On January 5, 1998, came on to be heard this § 523(a)(4), (5), (6), and (15) action filed by Donna Garza ("Plaintiff") against Raynaldo Garza, her former spouse and debtor herein ("Debtor" or "Defendant").

Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The Court has jurisdiction of this core matter under 28 U.S.C. §§ 1334 and 157(b)(2)(I).

In the extensive pretrial order, the parties stipulated to various facts, which facts are adopted as findings by the Court and not otherwise referenced except where involved in any finding or conclusion herein.

On April 11, 1997, Debtor filed a voluntary petition for protection under Title 11, Chapter 7 of the United States Bankruptcy Code (the "Code")..

On January 6, 1997, in Cause No. 96–CI–09235 in the 224District Court of Bexar County, Texas, a Final Decree of Divorce (the "Decree") was rendered regarding the Plaintiff and Defendant.

The actual trial of the divorce for which the Decree was entered occurred on November 22, 25, and 26, 1996.

On March 27, 1997, in the divorce court, an Order Clarifying Prior Order and Order to Appear (the "Clarifying Order") was entered. Neither side appealed the Decree or the Clarifying Order.

On March 25, 1997, in the divorce court, a Final Judgment (the "Final Judgment") on a garnishment action brought by Plaintiff against Defendant was entered.

Defendant has never disputed the fact or law that the $1,500 per month total child support for the couple's three children, ordered on page 17 of the Decree to be paid by Debtor to Plaintiff, is not dischargeable pursuant to § 523(a)(5) of the Code.

The two debts forming the basis of this adversary proceeding and for which a determination of the dischargeability of each has been requested are generally described as follows:

A. That specific debt listed on page 29 of the Decree under paragraph number "3" on said page that pertains to the payment of "a portion of the Oscar de La Hoya lawsuit, Cause No. SA–95–CA–0861, pending in the United States District Court for the Western District of Texas–San Antonio Division constituting fifty percent (50%) of the first $50,000.00 and sixty percent (60%) of the second $50,000.00 received from any settlement or judgment in the lawsuit or from the transaction that was the basis of the lawsuit" ("Debt 1").

B. That specific debt listed on page 29 of the Decree under paragraph number "4" on said page that pertains to the award of a "Judgment for the sum of One Hundred Twenty Three Thousand Seven Hundred Fifty and no/100 Dollars ($123,750.00) of and against [Debtor]" ("Debt 2").

With respect to Debt 1, of the first $50,000 received, Tinsman & Houser, Inc., Debtor's attorneys in the referenced action, were paid $19,250, pursuant to a contingent fee agreement, Debtor was paid $30,750 on December 4, 1996, and Plaintiff was not paid any portion of the first $30,750 received by Debtor.

Of the second $50,000 received, Tinsman & Houser, Inc. was paid $19,250, pursuant to a contingent fee agreement, Plaintiff was paid $30,750, and Debtor was not paid any portion of the second $30,750 received. Plaintiff claims she is owed $24,250 on Debt 1. Defendant claims, at best, Plaintiff is owed $1,150. The $23,100 discrepancy arises out of Defendant's contention that, before computing Plaintiff's 50% interest in the first $50,000 received, and 60% interest in the second $50,000 received, there must be a deduction for the $38,500 contingent attorney fees paid to his attorneys per court order. Plaintiff contended that such attorney fees were not to be deducted. If this Court were writing on a clean slate, it would agree with this contention of Defendant. The Clarifying Order, however, adopts a construction agreeing with the Plaintiff's contention.

All sums paid to the Plaintiff by Defendant or Defendant's counsel were paid pursuant to garnishment proceedings.

### § 523(a)(5)

Plaintiff contends that the award of a portion of the Oscar de la Hoya lawsuit, *i.e.*, the $100,000 settlement (Debt 1), and the $123,750 judgment (Debt 2) awarded to the Plaintiff in the Decree and the Clarifying Order are debts in the nature of spousal support, alimony, and/or child support, and, hence, are not dischargeable pursuant to 11 U.S.C. § 523(a)(5). Citing, *In re Nunnally*, 506 F.2d 1024 (5th Cir.1975). In *In re Fox*, the court discussed *Nunnally* as follows:

*Nunnally* has been a difficult case to interpret and apply to other fact patterns and it has been somewhat overruled by the new Code. First, the language of the Code imposes a more stringent burden than *Nunnally*. The Code provides the award must be in the nature of alimony, support or maintenance which means that the award essentially must be for support or maintenance. Under *Nunnally*, it was enough if support considerations played a significant role in the determination of the award. Second, in *Nunnally* the Court did not discuss the facts; rather it appeared to determine that support played a significant role as a matter of law. A meaningful interpretation of *Nunnally* and of the Congressional intent in enacting § 523 requires looking at the facts of each case to determine whether the award is in the nature of alimony, support, or maintenance. Finally, *Nunnally* presents an all-or-nothing proposition; the award is either one of support or not. However, in examining a particular set of facts, it may be evident that only a portion of an award was in the nature of support and maintenance making only that particular part of the award nondischargeable.

*In re Fox*, 5 B.R. 317, 320 (Bankr.N.D.Tex. 1986). Exceptions to dischargeability are generally subject to a narrow construction. However, various courts have ruled that exceptions from discharge for child and spousal support deserve a liberal construction since the policy underlying § 523(a)(5) favors enforcement of support obligation over a debtor's fresh start. *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 750–51 (8th Cir.1995); *Matter of Swate*, 99 F.3d 1282, 1290 (5th Cir.1996). Under *Nunnally* and current case law, the court is to construe the intent of the parties, or the state court in creating the obligation and the purpose of the obligation *in light of the parties' circumstances at the time of the divorce.* See, e.g., 4 *Collier on Bankruptcy* ¶ 523.11[6] at 523–82 (15th ed. revised 1997); *In re Sternberg*, 85 F.3d 1400, 1405 (9th Cir.1996), *overruled on different grounds In re Bammer*, 131 F.3d 788 (9th Cir.1997); *Davidson v. Davidson (Matter of Davidson)*, 947 F.2d 1294 (5th Cir.

1991); *Matter of Benich,* 811 F.2d 943, 946 (5th Cir.1987). "'The circumstances of the parties subsequent to the entry of the judgment for divorce is irrelevant to that inquiry.'" *Matter of Swate,* 99 F.3d at 1286, *quoting In re Larson,* 169 B.R. 945, 952 (Bankr.D.N.D.1994). The courts have traditionally reviewed a number of factors in this context, depending on the factual circumstances of each case. 4 *Collier on Bankruptcy* at 523–83 *et seq., Matter of Benich,* 811 F.2d at 944–45; *In re Nunnally,* 506 F.2d at 1026; *Smith v. Billingsley (In re Billingsley),* 93 B.R. 476, 477 (Bankr.N.D.Tex.1987).

### Factor # 1—Labels in Agreement or Order

The Decree and Clarifying Order were the result of contested court hearings and not agreements between Plaintiff and Defendant. Debts 1 and 2 were placed in the Decree under the title of "Division of Marital Estate."

In the Clarifying Order, the court held:

> The Court further finds that the judgment entered against RAYNALDO GARZA in favor of DONNA L.GARZA in the amount of $123,750.00 represents her interest in and to RAYNALDO GARZA's existing contractual agreement between OSCAR DE LA HOYA and RAYNALDO GARZA which forms the basis of the settlement agreed to by the parties in the Federal Court Lawsuit under Cause Number SA–95–CA–0861; *RAYNALDO GARZA V. OSCAR DE LA HOYA,* et al., in the United States District Court for the Western District of Texas, San Antonio Division. The Court further considered the further needs and support for Movant, DONNA L. GARZA finding that this was the primary asset of the parties marital estate and was awarded fifty five percent (55%) of this asset.

*i.e.,* that this is how the $123,750 judgment (Debt 2) against Debtor was computed. (Plaintiff's Exhibit ("PX") 3, p. 19). At divorce, there was apparent testimony that Debtor's share of this agreement would be payable over the three years after the di-

vorce. It appears that such portion of the Clarifying Order is not entitled to collateral estoppel effect before this Court. In the first place, at best, such language falls into the non-binding "label" category. Secondly, the quoted support determination was not a necessary part of any final judgment in the apparent issues involved in the motion to clarify. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995).[1]

■ It was undisputed at the Bankruptcy Court trial that the underlying contract with Oscar de la Hoya and the basis for Debt 2 never came to fruition, *i.e.,* Debtor never realized any funds from such agreement and apparently he will not realize any funds from such agreement. From a § 523(a)(5) perspective, changed circumstances at the time of the bankruptcy, from those that existed at the divorce, are generally not to be considered by the Court. *Forsdick v. Turgeon,* 812 F.2d 801, 803 (2nd Cir.1987); *Draper v. Draper,* 790 F.2d 52 (8th Cir.1986); *In re Harrell,* 754 F.2d 902 (11th Cir.1985). *In re Smith,* 97 B.R. 326 (Bankr.N.D.Tex.1989); *Matter of Swate,* 99 F.3d at 1286. The cases so holding primarily relate to cases where a debtor's financial condition deteriorated post-divorce, or a wife's condition improved post-divorce.

The critical date for determination of intent of the domestic relations court is when the obligation arose. 4 *Collier on Bankruptcy* ¶ 523.11[6] at 523–82 (15th ed. rev.1977); *In re Sternberg,* 85 F.3d at 1405.

■ The Bankruptcy Court is generally not bound by labels in a settlement agreement or court orders. The Court must look behind the label and determine the true nature of the obligation. 4 *Collier on Bankruptcy,* ¶ 523.11[6][a], 523–83 (15th ed. rev. 1997); *Matter of Benich,* 811 F.2d at 945; *In re Nunnally,* 506 F.2d at 1027; *Goin v. Rives (In re Goin),* 808 F.2d 1391 (10th Cir.1981); *In re Smith,* 97 B.R. at 329–30. 4 *Collier on Bankruptcy,* ¶ 523.11[6][a] opines:

> Even so, the label given to an obligation may well [be] an accurate indication of the

1. The clarifying motion was not one of the exhib-    its offered into evidence.

parties' intent and deference to that characterization may be given by the bankruptcy court.[30] Similarly, when a state court enters an order after articulating the factors it considers, the label attached to the obligation by the court is entitled to great weight.[31] Because extraneous factors, such as business or tax considerations, are less likely to affect court orders, more weight is generally given to the labeling of an obligation in a court order as opposed to the labels in an agreement.

30. *Catron v. Catron (In re Catron)*, 164 B.R. 912 (E.D.Va.1994).

31. *Forsdick v. Turgeon*, 812 F.2d 801, 16 C.B.C.2d 452 (2nd Cir.1987); *Long v. West (In the Matter of Long)*, 794 F.2d 928 (4th Cir.1986).

However, as *Nunnally* points out, because of the unique status of alimony in Texas, labels in court orders can be sometimes considered as unduly restrictive. *In re Nunnally*, 506 F.2d at 1027. *See also, Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984).

### Factor # 2—Income and Needs of the Parties When the Obligation Became Fixed

At date of trial in this Court, Plaintiff was thirty-eight years old and Defendant was forty years of age. During marriage, the parties had three children, two girls and a boy. At date of trial in this Court, their ages were 11, 6, and 5 respectively.

Prior to the divorce and during the period of 1993–1995, the parties worked together in their successful business, Hispanic America, a Spanish promotional business. Their adjusted gross income was as follows: 1993—$100,000, 1994—$150,000, and 1995—$150,000.

Plaintiff basically handled the monetary business side of such business, *i.e.*, bookkeeping, etc. and Defendant did the creative side of the business and customer contact and promotion.

At the time of the divorce, Plaintiff was unemployed and perhaps not immediately employable (*Forsdick v. Turgeon*, 812 F.2d at 803) since she had been previously working for Debtor in their Hispanic America business. She presently works at U.S.F. & G. for a salary of $24,000 per year. Such salary was just raised from $22,000 per year. Apparently at or about the time of the divorce, and thereafter, up through trial herein, Plaintiff and her three children have lived with her mother and she pays her mother some rent. In her budget, she showed $300 per month rent. (PX 7). Except for private school expenses of $924, included in her budget expense of $4,278, Plaintiff's monthly expenses are modest. (PX 7). The budget showed net take-home of $1,658.28 (this was before the raise from $22,000 to $24,000 gross per year). Presumably, these figures were in a range of Plaintiff's support expenses at or about the time of the divorce. Prior to their divorce, the parties had sold their $450,000 house and plowed their $100,000 net proceeds back into their Hispanic America business. Such business was apparently in a state of serious deterioration after 1995 and prior to the divorce.

At the time of the divorce, Debtor was making approximately $48,000 gross per year, which lasted until approximately July–August 1997. Since then, his income deteriorated significantly to the extent that he allegedly now works on commission only.

At divorce, it appears Debtor had more marketable earning power and more business opportunities. Plaintiff's educational background was not stated. Debtor had an associates degree. At such time, Plaintiff had a probable future need for support. *Nunnally*, 506 F.2d at 1026; *Benich*, 811 F.2d at 945. The $1,500 per month total child support was not sufficient to provide Plaintiff and the three children with a standard of living commensurate with the apparent future prospects of Defendant at the time of the divorce. *Goin v. Rives (In re Goin)*, 808 F.2d at 1393. The only testimony admitted on the issue of fault of the breakup showed that it was Defendant's fault.

### Factor # 3—Amount and Outcome of Property Division

When a payment obligation is directly linked to the sale of identifiable property, the obligation is more likely to be property divi-

sion; however, the source of the payment obligation is not conclusive, depending on the need for support. 4 *Collier on Bankruptcy* ¶ 523.11[6][c] (15th ed. rev.1997); *Goin v. Rives (In re Goin)*, 808 F.2d at 1392.

In the District Court's affirmance of the Bankruptcy Court judgment in the *Goin* case, the District Court pointed out that the $80,000 judgment, payable in $5,000 yearly installments, did not bear interest. *In re Goin*, 58 B.R. 136 (D.Kan.1985). In this case, the $123,750 judgment (Debt 2), on its face, did not bear interest, but it was not payable in any installments.

### Factor # 4—Number and Frequency of Payments

██Limited payments over a short period are more likely to be considered property settlement than support; whereas, sums paid in monthly increments over an extended period of time are indicative of support. *In re Sternberg*, 85 F.3d at 1406; *Shaver v. Shaver*, 736 F.2d at 1317; George H. Singer, *Section 523 of the Bankruptcy Code; The Fundamentals of Nondischargeability in Consumer Bankruptcy*, 71 AM. BANKR. L.J. 325, 373 (Summer 1997) (*"Singer"*). However, these factors will generally be considered in conjunction with other factors and not simply by themselves. 4 *Collier on Bankruptcy*, ¶ 523.11[6][e], 523–85 (15th ed. rev.1997). Singer's article points out: "[P]ractical and tax considerations may lead the parties to spread out the payment on account of a property settlement over an extended period. A support award, by the same token, may be of only limited duration." *Singer*, at 373. In *Matter of Bailey*, 20 B.R. 906, 910 (Bankr.W.D.Wis.1982), the court stated:

> In the present case, the award of $23,100 cannot be considered alimony, maintenance or support. The form of the award is more consistent with a property division than support. The award was to be paid as a lump sum, it was not made terminable on death or remarriage and it was labelled a property settlement by the divorce court. More importantly, the award does not appear to have been made to fulfill an obligation of support. Under Wisconsin law

there is a presumption that marital assets will be divided equally between the spouses, absent factors such as the economic status of one which would make such a division unfair. Wis.Stat. § 767.255 (1977). In this case the judge chose, with the apparent consent of Geneva, to follow this presumption and divide the property equally. Given these circumstances, an unrebutted presumption arises that special circumstances of need were not considered by the court and that the award was intended to simply divide the property.

Likewise, in this case, neither Debts 1 or 2 was terminable upon death or remarriage. *See also, Forsdick v. Turgeon*, 812 F.2d 801. In that case, $100,000 non-modifiable alimony was awarded by the state court, plus $40,000 which was not classified. The $100,000 was to be paid in monthly installments over seven years and the $40,000 paid within six months of the divorce decree. The Bankruptcy Court found the balance of the $40,000 dischargeable and the $100,000 nondischargeable. Such findings were upheld on appeal. *Also see, Brody v. Brody (In re Brody)*, 3 F.3d 35 (2nd Cir.1993).

### Factor 5—Ability to Modify Payments

██ "If a party has the ability to return to court in order to modify the obligation based upon the domestic relations doctrine of 'changed circumstances,' it is more likely to be considered to be in the nature of support." George H. Singer, *Section 523 of the Bankruptcy Code: The Fundamentals of Nondischargeability in Consumer Bankruptcy*, 71 AM. BANKR. L.J. 325, 373 (Summer 1997). Neither Debt 1 nor Debt 2 was modifiable for changed circumstances.

### § 523(a)(5) Conclusion

██ Primarily based on Factor # 4, Debt 1, in the amount of $24,250, is found to not be a § 523(a)(5) debt, but is found to be a familial property obligation. It could be argued that the 60% of the second $50,000 was alimony because it was in excess of a 50% equal property division; however, the evidence is undisputed that Plaintiff was paid this particular amount. Per the Clarifying

Order, on the first $50,000, Plaintiff was awarded $25,000, but received only $750.

■ Primarily based on Factors ## 2 and 4 discussed above, it appears that $11,250 of the $123,750 judgment (Debt 2), is a § 523(a)(5) nondischargeable obligation, being in the nature of support.

The $112,500 balance of such judgment is in the nature of a familial property obligation. In attempting to arrive at support determinations, it is appropriate to consider what a normal division of a community interest would have amounted to. *In re Calhoun,* 92 B.R. 686, 687 (Bankr.W.D.Tex.1987). In this instance, the figure on Debt 2 is computed as follows. The domestic relations court arrived at the $123,750 judgment by figuring that Debtor would likely receive $75,000 per year for three years, *i.e.,* totaling $225,000, on a 15% commission on a minimum sponsorship of $500,000. (PX 3 at 19). Plaintiff was awarded a 55% interest in such $225,000 possible commission, *i.e.,* $123,750. If Plaintiff was awarded a straight 50–50 community interest, she would have received $112,500. $123,750 less $11,250 equals $11,250, which the Court finds was attributable to § 523(a)(5) support.

### § 523(a)(4) and (6) and Debt 1

■ In alternative response to the foregoing possible finding on Debt 1, Plaintiff pleads that the Clarifying Order findings show a debtor's fraud or defalcation while acting in a fiduciary capacity or an embezzlement (all under § 523(a)(4)), or a willful and malicious offense under § 523(a)(6), thereby allegedly making Debt 1 nondischargeable. In the Clarifying Order, the domestic relations court specifically held:

> The Court further finds that RAYNALDO GARZA was aware of the Courts rulings and specific findings on November 26, 1996 awarding DONNA L. GARZA fifty percent (50%) of the first $50,000.00 received in the above-referenced lawsuit and was to deliver to Movant immediately upon receipt, $25,000.00 representing fifty percent (50%) of the first $50,000.00 installment. The Court finds that RAYNALDO GARZA on or about December 4, 1996 intentionally, willfully, and fraudulently refused to deliver the property awarded to Movant, DONNA L. GARZA in violation of the oral ruling to the Court.[2]

While normally collateral estoppel would not apply in the context of a domestic relations court judgment, for purposes of a § 523(a)(5) determination, it would appear to apply to these findings of the domestic relations court, in the context of a § 523(a)(4) embezzlement offense or (a)(6) offense. The embezzlement issue is identical to the one involved in the prior action, the issue was actually litigated and such finding was a necessary part of the Clarifying Order. *RecoverEdge L.P. v. Pentecost,* 44 F.3d at 1291. There is no contention made by Defendant that the Clarifying Order is not a final judgment on the foregoing issues. While Defendant contests the ability of the domestic relations court to enter the Clarifying Order, by reason of VTCA Family Code § 9.007, such court had potential jurisdiction to enter such order which was not appealed. *Waldron v. Waldron,* 614 S.W.2d 648 (Tex.Civ.App.— Amarillo 1981, no writ); *Hooks v. Hooks,* 771 F.2d 935, 950 (6th Cir.1985); *Holloway v. Starnes,* 840 S.W.2d 14, 22 (Tex.Civ.App.— Dallas 1992, writ denied).

Debt 1, in the amount of $24,500, is found nondischargeable as a § 523(a)(4) embezzlement offense or a § 523(a)(6) offense. In view of this finding, it is unnecessary to address Plaintiff's contentions that, by reason of VTCA Family Code § 9.011, with respect to Debt 1, there was a § 523(a)(4) fiduciary relationship between Debtor and Plaintiff. Debtor's response was that such fiduciary relationship created by such statute was not the type contemplated by § 523(a)(4) since it was not a technical trust. *Citing, In re Angelle,* 610 F.2d 1335 (5th Cir.1980) and related cases.

Further, in view of such findings on Debt 1, it is unnecessary to address § 523(a)(15) issues with respect to same; however, to

---

2. For whatever relevance it might have, if any, neither party brought forward the November

1996 state court statement of facts.

complete the record, same will be discussed briefly hereafter.

### § 523(a)(15)

From the foregoing findings, and before reaching the § 523(a)(15) issues, Debtor is still liable to Plaintiff for $24,250 on Debt 1 and $11,250 on Debt 2, for a total of $35,500. The $112,500 balance on Debt 2 has been found to be a familial property obligation.

### *Burden of Proof Under § 523(a)(15)*

■ While there is a split of authority, the Court adopts the majority view that the nondebtor spouse bears the burden of proof to show that the debt at issue arose in the divorce proceeding and is not covered by § 523(a)(5). Once that burden is met, the Debtor bears the burden of proving either that he is unable to pay the debt, or the detriment of not discharging the debt outweighs the benefits of payment to the spouse. *In re Stone,* 199 B.R. 753, 757–83 (Bankr. N.D.Ala.1996); *Gamble v. Gamble,* No. 2–96–CV185 (N.D.Tex. Mar. 24, 1997); *Singer,* at 410.

### *§ 523(a)(15)(A) Inability to Pay*

■ Unlike the general "rear view mirror" approach to nondischargeability followed by the vast majority of courts under § 523(a)(5), Code § 523(a)(15) is concerned with the relative positions of the debtor and former spouse at the time of the bankruptcy, *not* the time of the divorce decree or marital agreement.

*Singer* at 407–408. (footnote omitted). In *In re Clark,* 207 B.R. 651, 656 (Bankr.E.D.Mo. 1997), the court stated:

Subsection (A) looks only at the debtor's ability to pay. *In re Henson,* 197 B.R. 299, 304 (Bankr.E.D.Ark.1996). An analysis of the debtor's ability to pay must examine the debtor's present circumstances and future financial prospects including an ability to make minimum monthly payments, rather than a snapshot

of the debtor's current ability to pay. *In re Schmitt,* 197 B.R. 312, 316 (Bankr. W.D.Ark.1996), *In re Florio,* 187 B.R. 654, 657 (Bankr.W.D.Mo.1995).

*Id.*

In *In re Dressler,* 194 B.R. 290 (Bankr. D.R.I.1996), the court stated: "Cases addressing the issue are virtually uniform in utilizing § 1325(b)(2)'s 'disposable income' test to evaluate evidence under § 523(a)(15)(A)'s 'ability to pay' provision." [3] In *In re Jodoin,* 209 B.R. 132, 142 (9th Cir. BAP 1997), the court stated:

> 2.  The Primary Test For Measuring A Debtor's Ability To Pay Is The "Disposable Income" Test.
>
> We also agree with the bankruptcy court that the "disposable income" test that is delineated in Code § 1325(b) provides an excellent starting point for measuring a debtor's ability to pay under § 523(a)(15)(B). [It appears that the court meant to cite § 523(a)(15)(A)]. *See,* 11 U.S.C. § 1325(b)(2) (1994). *Some courts have been reluctant to use this test in the divorce situation where parties have been known to sacrifice their own financial well-being to spite their ex-spouse.* However a proper application of the test should take into account the prospective income that the debtor should earn and the debtor's reasonable expenses. *See, Dressler,* 194 B.R. at 304 (citing *In re Cardillo,* 170 B.R. 490, 491 (Bankr.D.N.H.1994)) ("[W]hat funds are available to the debtor to pay the obligation after deducting 'reasonably necessary' expenses."). These types of adjustments are appropriate and should not cause courts to reject the disposable income test as an excellent reference point.

*Id.* (Emphasis added) (Footnotes omitted).[4]

Debtor's testimony was not a model of credibility. For example, it appears that, contrary to Debtor's trial testimony, Juan Constantino, his acquaintance, was a front

---

**3.**  Section 1325(b)(2) states: "For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended,...."

**4.**  Plaintiff argues that Debtor's present seeking of a low-paying job with a religious affiliation (discussed hereafter) is Debtor's intentional sacrifice of well-being to spite Plaintiff and her children.

for Debtor's behind-the-scenes control of the ADV business for a period of time in the past, and post-divorce, but prebankruptcy. ADV is apparently not presently an active entity.

Debtor now rents a $148,000 house titled in the name of his sister-in-law for a rent of $890 per month, plus expenses. Supposedly, his brother and such sister-in-law are able to afford to buy this house, but yet still live in a trailer park themselves. This strains credulity.

Debtor got married in May 1997 to a twenty-two year old, who is a junior college student, with no income. Debtor's most recent job supposedly is strictly on commission with Excel, a telephone company, where he has been employed since September 1997 and has not yet received a commission check. The Excel situation is supposedly akin to an Amway-type distributorship. Supposedly, he and his present wife are interviewing with a church to take possible positions with the church at a combined rate of pay in the $20,000—$30,000 range. This testimony was marginally credible. Debtor points out that Plaintiff is presently making more than he is. While, this is true, it appears Debtor's reasonable potential prospects, of gross income before taxes, are in the $48,000 range previously discussed. He appears to have the capacity to occasionally make independent contractor short-time deals, where, as recently occurred, he can net $4,000–$5,000.

§ *523(a)(15)(A) "[T]he debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ."*

(Emphasis added).

### From Income

As previously shown, Debtor pays court-ordered child support of $1,500 per month, plus on Debts 1 and 2, $35,500 total has already been found nondischargeable. Debtor met his burden of proof to show that he does not have the ability to pay such $112,500 from income whether such income were even in the potential gross income range of $48,000. Debtor's tax return records generally support his testimony regarding his income.

### From Property

A troublesome aspect of the property issues is the implication that Debtor may allegedly have ferreted away some money from the initial $30,750 he received on the Debt 1 obligation,[5] to enable his sister-in-law to buy his present residence and rent it to him. To the extent it is relevant, neither side offered any evidence on the down-payment made on such house. Further, in the foregoing findings, with respect to Debt 1, the $24,250 unpaid portion thereof has been found nondischargeable.

On balance, Debtor has met his § 523(a)(15)(A) burden of proof, and $112,500 of Debt 2 is dischargeable.

### Alternative Findings on Debt 1 Balance of $24,250

The Court has previously found this debt nondischargeable under § 523(a)(4), as embezzlement, or as a § 523(a)(6) offense. The Court further finds that same is nondischargeable under § 523(a)(15)(A) and (B). It appears Debtor has the ability to pay such debt from income over time. Under the benefit/detriment test of § 523(a)(15)(B), Debtor has not shown, by a preponderance of the credible evidence, that discharging such debt would result in a benefit to the Debtor that outweighs the detrimental consequences to his former wife and children. *See*, present expenses of Plaintiff on page 8 hereof, and Debtor's present and potential future income situation discussed on page 15 hereof.

### Attorney Fees

Plaintiff's reasonable attorney fees in Bankruptcy Court are found to be $8,000. However, Plaintiff has not cited any authority to support the award of same by this

---

**5.** Under any construction of the domestic relations court's initial decree or Clarifying Order, Debtor would have been entitled to keep $6,500

of such $30,750. As indicated, Debt 1 has been found nondischargeable in the amount of $24,-250.

Court. This is not a situation where the state court has already awarded same or where there is an underlying agreement between the parties allowing attorney fees. *Matter of Davidson,* 947 F.2d at 1297–1298.

The foregoing findings essentially dispose of the issues between the parties in this Court.